1  JOYCE C. WANG [Bar No.: 121139; jwang@ccplaw.com]
   CHRISTOFER C. NOLAN [Bar No.: 229542; cnolan@ccplaw.com]
2  CARLSON, CALLADINE & PETERSON LLP
   353 Sacramento Street, 16th Floor
3  San Francisco, California 94111
   Telephone:    (415) 391-3911
4  Facsimile:    (415) 391-3898

5  Attorneys for Defendant
   AFFILIATED FM INSURANCE COMPANY
6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11  THRESHOLD ENTERPRISES, LTD., a          CASE NO.: C08 00327 PVT
    Delaware corporation,
12
              Plaintiff,                     DEFENDANT AFFILIATED FM
13                                           INSURANCE COMPANY'S NOTICE OF
       vs.                                   REMOVAL TO THE UNITED STATES
14                                           DISTRICT COURT FOR THE
    AFFILIATED FM INSURANCE                  NORTHERN DISTRICT OF
15  COMPANY, a Rhode Island corporation, and CALIFORNIA – SAN JOSE DIVISION
    DOES 1 through 30,
16                                           JURY TRIAL DEMANDED
              Defendants.
17

18

19         TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

20  NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION; AND TO PLAINTIFF

21  AND ITS ATTORNEYS OF RECORD HEREIN:

22         PLEASE TAKE NOTICE that Defendant Affiliated FM Insurance Company

23  ("Defendant") hereby removes to the United States District Court for the Northern District of

24  California, San Jose Division, the action described below presently pending in the Superior Court

25  of the State of California, in and for the County of Santa Cruz.

26         This removal is made pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332 and pursuant to

27  the procedures set forth in 28 U.S.C. § 1446. The grounds for removal of this state court action to

28  federal court are provided below.

DEFENDANT'S NOTICE OF REMOVAL TO THE U.S.D.C. (N.D. CAL.)
CASE NO.:

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

JURISDICTION

1.    This Court has original jurisdiction over this civil action, and this action is appropriate for removal pursuant to 28 U.S.C. §§ 1332 and 1441, as all parties are citizens of different states and the matter in controversy far exceeds the jurisdictional minimum of $75,000, exclusive of interest and costs, as detailed below.

INTRADISTRICT ASSIGNMENT

2.    Defendant believes that the San Jose Division of the United States District Court for the Northern District of California is the most appropriate intradistrict assignment for this civil action, as it is being removed from the Superior Court for the County of Santa Cruz, and the facts underlying the claim of loss primarily occurred in Santa Cruz County.

BASIS FOR REMOVAL

3.    On December 17, 2007, Plaintiff Threshold Enterprises, Ltd. ("Plaintiff") filed an action in the Superior Court of the State of California, in and for the County of Santa Cruz, entitled, *THRESHOLD ENTERPRISES, LTD. v. AFFILIATED FM INSURANCE COMPANY and DOES 1 through 30,* Case No. 158936 (hereinafter "the State Action"), a true and correct copy of which Complaint is attached hereto in its entirety as **Exhibit A**.

4.    On December 18, 2007, Plaintiff filed an Amended Complaint in the same court, which incorporated by attachment a copy of the insurance agreement at issue in this case. Attached hereto as **Exhibit B** is a true and correct copy of the Amended Complaint and its attachment.

5.    The Amended Complaint alleges that Plaintiff is "a corporation organized under the laws of the State of Delaware with its principal place of business in Scotts Valley, California." (Amended Complaint ¶ 3).

6.    The Amended Complaint alleges that Defendant Affiliated FM Insurance Company is "an insurance company organized under the laws of the State of Rhode Island with its principal place of business in a state other than California." (Amended Complaint ¶ 4). Defendant is and at all relevant times has, in fact, been organized under the laws of the state of Rhode Island, with its principal place of business in Johnston, Rhode Island.

2

7.    Although Plaintiff has not pleaded the amount of damages being sought in its Complaint or Amended Complaint, on September 17, 2007, Plaintiff presented to Defendant a "Roof Collapse Insurance Claim Report" in which it seeks, at a minimum, $1,851,148.00 in alleged business interruption expenses, which is $1,638,295.00 over and above the $212,853.00 that Defendant has already paid on this portion of the claim. See Declaration of Lyle Leiser in Support of Removal and attachments thereto. The amount in controversy is thus well in excess of the jurisdictional minimum of $75,000 set forth in 28 U.S.C. § 1332.

8.    Defendant received effective service of the Amended Complaint on December 19, 2007 through personal service to its authorized agent for the service of process. Thus, this Notice of Removal is timely, the procedures set forth in 28 U.S.C. § 1446 have been met, and removal is thus effected.

9.    On January 16, 2008, Defendant caused Plaintiff to be served with Defendant's Answer to the Amended Complaint, which was also filed in the Superior Court of the State of California, in and for the County of Santa Cruz on January 16, 2008. A true and correct copy of the state-court endorsed Answer is attached hereto as **Exhibit C.**

WHEREFORE, Defendant Affiliated FM Insurance Company hereby removes the State Action described herein to the United States District Court for the Northern District of California, San Jose Division, for all purposes, with a copy of the Notice of Removal to be filed in the Superior Court of the State of California, County of Santa Cruz, and served upon Plaintiff.

WHEREFORE, as noted in the caption of this document, Defendant respectfully demands a jury trial in this action.

DATED: January 17, 2008

CARLSON, CALLADINE & PETERSON LLP


By: _____
JOYCE C. WANG
Attorneys for Defendants, AFFILIATED FM
INSURANCE COMPANY

134776

DEFENDANT'S NOTICE OF REMOVAL TO THE U.S.D.C. (N.D. CAL.)
**CASE NO.:**

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

**PROOF OF SERVICE BY MAIL**
(Code of Civil Procedure §§ 1013a(3) & 2015.5)

I, the undersigned, declare that I am employed in the County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is CARLSON, CALLADINE & PETERSON LLP, 353 Sacramento Street, 16th Floor, San Francisco, California 94111.

On January 17, 2008, I served the attached:

**DEFENDANT AFFILIATED FM INSURANCE COMPANY'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION -  JURY TRIAL DEMANDED**

**CIVIL COVER SHEET**

on the person(s) named below in said cause, by placing a true copy thereof enclosed in an envelope with postage prepaid fully thereon. Said envelope(s) were thereafter deposited with the United States Postal Service at San Francisco, California, in accordance with this firm's business practice for collection and processing correspondence for mailing, with which I am personally and readily familiar. All correspondence is deposited with the United States Postal Service on the same day in the ordinary course of business. Said envelope(s) were addressed as follows:

Dawn S. Pittman, Esq.
Morgan, Lewis & Brockius LLP
One Market St., Spear Street Tower
San Francisco, CA  94105

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed at San Francisco, California, on January 17, 2008.

Margie Jones

DEFENDANT'S NOTICE OF REMOVAL TO THE U.S.D.C. (N.D. CAL.)
**CASE NO.:**

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)



SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AFFILIATED FM INSURANCE COMPANY, a Rhode Island
corporation, and DOES 1 through 30,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
THRESHOLD ENTERPRISES, LTD., a Delaware corporation

*POR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

FILED

DEC 17 2007

ALEX CALVO, CLERK
BY DEBORAH ROJAS
DEPUTY, SANTA CRUZ COUNTY

FILED BY FAX

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
   *Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SANTA CRUZ COUNTY SUPERIOR COURT<br>COURTHOUSE<br>701 OCEAN STREET, ROOM 110<br>SANTA CRUZ, CA 95060 | CASE NUMBER:<br>*(Número del Caso):*<br>CV 158936 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

DAWN S. PITTMAN, ESQ.                                    Tel: (415) 442-1000   Fax: (415) 442-1001
MORGAN, LEWIS & BOCKIUS LLP
San Francisco, CA 94105-1126

| DATE:<br>*(Fecha)* DEC 17 2007 ALEX CALVO | Clerk, by DEBORAH ROJAS | , Deputy |
|---|---|---|
| | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Affiliated FM Insurance Company

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*                                          Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**



Code of Civil Procedure §§ 412.20, 465

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ
701 Ocean Street
Santa Cruz, CA, 95060

*For Court Use Only*

**FILED**

DEC 17 2007

ALEX CALVO, CLERK
BY DEBORAH ROJAS
DEPUTY, SANTA CRUZ COUNTY

PLAINTIFF:    THRESHOLD ENTERPRISES LTD

DEFENDANT:  AFFILIATED FM INSURANCE COMPANY

| CASE MANAGEMENT INFORMATION AND SETTING | CASE NO: CISCV158936 |
|---|---|

This case is in Santa Cruz County's Case Management Program. It is the Duty of each party to be familiar with the california rules of court and the date, time and place of the first case management conference.

This notice must be served with the summons on all defendants and cross-defendants. Notice of any other pending case management conference must be served on subsequently named defendants and corss-defendants.

**ATTENTION DEFENDANT:** YOU HAVE 30 DAYS AFTER THE SUMMONS IS SERVED ON YOU TO FILE A RESPONSE TO THE COMPLAINT. THE DATE BELOW <u>DOES NOT EXTEND</u> THE TIME TO FILE A RESPONSE. SEE THE SUMMONS FOR INSTRUCTIONS FOR RESPONDING TO THE SUMMONS AND COMPLAINT.

The first Case Management Conference hearing date is:

Date: 04/15/08          Time: 8:29          Department No.:  9

*Telephonic court appearances are provided through CourtCall to the court. To make arrangments to appear at the Case Management Conference by telephone, please call the program administrator for CourtCall at (310) 572-4670 or (888) 882-6878 at least five (5) court days prior to the hearing. DO NOT CALL THE COURT.*

MC

# THE LAWYER'S PLEDGE

In order to raise the standards of civility and professionalism among counsel and between the Bench and the Bar, I hereby pledge the following:

1. To at all times comply with the California Rules of Professional Conduct;
2. To honor all commitments;
3. To be candid in all dealings with the court and counsel;
4. To uphold the integrity of our system of justice and not compromise personal integrity for the sake of a client, case or cause;
5. To seek to accomplish the client's legitimate goals by the most efficient and economical methods possible;
6. To act in a professional manner at all times, to be guided by a fundamental sense of fair play in all dealings with counsel and the court, and to be courteous and respectful to the court;
7. To be on time;
8. To be prepared for all court appearances - to be familiar with all applicable court rules;
9. To adhere to the time deadlines set by statute, rule, or order;
10. To avoid visual displays of pique in response to rulings by the court;
11. To discourage and decline to participate in litigation or tactics that are without merit or are designed primarily to harass or drain the financial resources of the opposing party;
12. To avoid any communications with the judge concerning a pending case unless the opposing party or lawyer is present, or unless permitted by court rules or otherwise authorized by law;
13. To refrain from impugning the integrity of the judicial system, its proceedings, or its members;
14. To treat all court personnel with the utmost civility and professionalism;
15. To remember that conflicts with opposing counsel are professional and not personal - vigorous advocacy is not inconsistent with professional courtesy;
16. To refrain from derogatory statements or discriminatory conduct on the basis of race, religion, gender, sexual orientation or other personal characteristic;
17. To treat adverse witnesses and litigants with fairness and due consideration;
18. To conduct discovery proceedings as if a judicial officer were present;
19. To meet and confer with opposing counsel in a genuine attempt to resolve procedural and discovery matters;
20. To not use discovery to harass the opposition or for any other improper purpose;
21. To not arbitrarily or unreasonably withhold consent to a just and reasonable request for cooperation or accommodation;
22. To not attribute to an opponent a position not clearly taken by that opponent;
23. To avoid unnecessary "confirming" letters and to be scrupulously accurate when making any written confirmation of conversations or events;
24. To not propose any stipulation in the presence of the trier of fact unless previously agreed to by the opponent;
25. To not interrupt the opponent's legal argument;
26. To address opposing counsel, when in court, only through the court;
27. To not seek sanctions against or disqualification of another lawyer to attain a tactical advantage or for any other improper purpose;
28. To not schedule the service of papers to deliberately inconvenience opposing counsel;
29. To refrain, except in extraordinary circumstances, from using the fax machine to demand immediate responses for opposing counsel.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*NAME AND ADDRESS*):    TELEPHONE NO.: | *For Court Use Only* |
|---|---|
| ATTORNEY FOR (*NAME*): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ**

☐ Santa Cruz      ☐ Watsonville Branch
   701 Ocean Street, Room 110      1430 Freedom Boulevard
   Santa Cruz, CA 95060      Watsonville, CA 95076

Plaintiff/Petitioner:

Defendant/Respondent:

| STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION<br>OR PRIVATE ARBITRATION<br>Must be filed 10 days before Case Management Conference | CASE NO. |
|---|---|

FOR GOOD CAUSE as stated in the attached supporting declaration,
CASE MANAGEMENT CONFERENCE CURRENTLY SET FOR: (DATE)_____
CHECK ONLY ONE BOX:

1. **( )** The parties stipulate to court ordered mediation.

2. **( )** The parties stipulate to private mediation or arbitration, to be arranged by the parties and completed within 120 days of the current CMC date stated above. The parties agree that such process shall be a good faith attempt to resolve the case.

**SIGNATURES OF COUNSEL:**

_____    TYPE NAME: _____
DATE: _____    ATTORNEY FOR: _____
_____    TYPE NAME: _____
DATE: _____    ATTORNEY FOR: _____

☐ ADDITIONAL SIGNATURES IN ATTACHMENT "A"

**ORDER**

**BASED ON THE STIPULATION OF THE PARTIES, THE SUPPORTING DECLARATION,
AND FINDING GOOD CAUSE, THE APPLICATION IS HEREBY GRANTED**

☐ SET FOR JUDICIAL MEDIATION ON: _____ AT: _____ a.m./p.m.

☐ VACATE CMC CURRENTLY SET FOR: _____ AT: _____ a.m./p.m.

Date: _____     _____

**JUDGE OF THE SUPERIOR COURT**

SUPCV-1012 (Rev. 1/07)

Page 3 of 3
Local Rule 7.1.02

**STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION
OR PRIVATE ARBITRATION**

1  MORGAN, LEWIS & BOCKIUS LLP
   DAWN S. PITTMAN, SBN 177962
2  One Market, Spear Street Tower
   San Francisco, California 94105-1126
3  Tel: 415.442.1000
   Fax: 415.442.1001
4
   Attorneys for Plaintiff
5  THRESHOLD ENTERPRISES LTD.

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SANTA CRUZ

10

11  THRESHOLD ENTERPRISES, LTD., a          CASE NO. 1 5 8 9 3 8
    Delaware corporation,
12
                      Plaintiff,            COMPLAINT FOR BREACH OF
13                                          CONTRACT;
                vs.                         JURY TRIAL DEMAND
14
    AFFILIATED FM INSURANCE COMPANY,
15  a Rhode Island corporation, and DOES 1
    through 30,
16                                          Complaint Filed:    December 17, 2007
                      Defendants.
17

18

19      Threshold Enterprises, Ltd. ("Threshold"), for its complaint, alleges as follows:

20                              **Nature of Action**

21      1.      By this action, Threshold seeks damages from Defendant Affiliated FM Insurance

22  Company for property damage and business interruption losses resulting from a December 19,

23  2005 roof collapse at a building in Threshold's manufacturing complex in Scotts Valley,

24  California. Defendant issued an "All Risk" insurance policy issued to Threshold for the policy

25  period April 1, 2005 through April 1, 2006 which provides coverage for property damage and

26  business interruption loss incurred by Threshold.

27      2.      Threshold seeks damages for breach of contract against Defendant Affiliated FM

28  Insurance Company for its failure and refusal to meet their obligations to pay Threshold's loss,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                            1-SF/7642692.1

1  including but not limited to amounts paid to repair property damage, salvage and re-test raw

2  materials, procurement of lost raw materials, and reasonable professional fees paid to produce and

3  certify the details of Threshold's business to determine the amount of loss payable under the

4  Affiliated FM ProVision All Risk policy. Threshold contends that these amounts are covered in

5  full by policy issued by defendant. Defendant disputes, or on information and belief will dispute,

6  its insuring obligations to Threshold.

7  ### The Parties and Jurisdiction

8  3.    Threshold is a corporation organized under the laws of the State of Delaware with

9  its principal place of business in Scotts Valley, California.

10  4.    Defendant Affiliated FM Insurance Company is an insurance company organized

11  under the laws of the State of Rhode Island with its principal place of business in a state other

12  than California. At all relevant times, Affiliated FM was licensed to do, and was doing and

13  transacting business, in the State of California.

14  5.    Threshold is unaware of the true identity, nature, and capacity of each of the

15  defendants designated as Doe Defendants 1 through 30 herein. Plaintiff is informed and believes

16  and thereon alleges that each of the defendants designated herein as a Doe is in some manner

17  responsible for the damages and injuries as are alleged in this complaint. Upon learning the true

18  identity, nature and capacity of the Doe Defendants, plaintiff will amend this complaint to allege

19  their true names and capacities.

20  6.    Threshold is informed and believes and thereon alleges that all material times

21  herein alleged that the defendants, and each of them, were the agents, servants and employees of

22  the other defendants and each of them.

23  7.    Venue is appropriate in this Court inasmuch as (i) the contract of insurance at issue

24  was delivered to Threshold in Scotts Valley, California, (ii) the property damage and business

25  interruption loss arise from acts or events within this Court's jurisdiction, (iii) the property

26  damage and business interruption loss exceeds $25,000 (iv) the defendants are licensed to do, and

27  have in fact conducted, business in the State of California and in the County of Santa Cruz; (v)

28  Defendant Affiliated FM issued the insurance policy covering injuries arising from acts or events

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7642692.1

2

COMPLAINT

1   within this Court's jurisdiction, (vi) performance under the contract of insurance issued by

2   Defendant Affiliated FM is sought in this venue.

3                                    **The Insurance Contract**

4          8.      Affiliated FM issued policy number TS182 ("the Policy") to Threshold for the

5   period April 1, 2005 through April 30, 2006. A copy of the policy is attached hereto as Exhibit 1

6   to this complaint, and is incorporated, in full, by this reference.

7          9.      Threshold is the named insured under the Policy. The Policy was delivered to

8   Threshold in the State of California, and all premiums for the policy were paid by Threshold from

9   the State of California.

10         10.     Threshold timely has initiated this suit as the Policy provides that an action for

11  recovery of any claim under the Policy may be filed against defendant Affiliated FM within two

12  years after the date on which the direct physical loss or damage first commenced or occurred.

13         11.     Threshold has satisfied all terms and conditions of insurance policy including,

14  among other things, payment of substantial premiums. Alternatively, the performance of such

15  terms and conditions has been waived and excused by the defendant's conduct. In either event,

16  Threshold is entitled to the full benefit of its insurance coverage.

17

18              **The Affiliated FM Insurance Policy Responds To The Threshold**
                    **Property Damage and Business Interruption Loss**

19         12.     The Policy issued by defendant provides insurance coverage for "all risks of direct

20  physical loss or damage to the insured property" of Threshold properties, including without

21  limitation the building located at 23 Janis Way in Scotts Valley, California. Further, the Policy,

22  via the ProVision Business Interruption Endorsements, provides coverage for "actual loss of

23  Extra Expense sustained by the Insured" and "the actual loss sustained by the Insured due to the

24  necessary interruption of business during the period of interruption, and 30 consecutive days

25  following that period." The Threshold "loss" resulting from the December 19, 2005 roof collapse

26  at the Threshold property located at 23 Janis Way, includes but is not limited to the property

27  damage to the building and fixtures of the warehouse, damaged inventory, stock, and raw

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7642692.1                                      3

1  product, the resulting business interruption loss that continued until normal business operations

2  were restored at Threshold, and the professional fees incurred to determine the amount of loss to

3  Threshold. The loss that Threshold sustained triggers coverage under the defendant's policy.

4       13.    The Threshold loss is covered by the insurance policy issued by defendant, and

5  does not come within any exception to, or exclusion from, coverage.

6       14.    Defendant Affiliated FM is obligated to pay in full Threshold's loss and has failed

7  or refused to do so. Affiliated FM further has failed to make a determination on Threshold's

8  claim for coverage within a reasonable time frame.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

10       15.    Threshold repeats and realleges the allegations in paragraphs 1 through 14, which

11  are incorporated, in full, by this reference.

12       16.    Threshold notified Affiliated FM of the December 19, 2005 roof collapse and the

13  property damage and business interruption loss resulting therefrom, and has requested payment of

14  the all loss amounts owed to Threshold pursuant to the terms of the relevant insurance policy and

15  applicable law.

16       17.    Affiliated FM has failed or refused fully to pay and reimburse the loss amounts

17  incurred by Threshold and/or fully to acknowledge their insuring obligations to Threshold.

18       18.    Affiliated FM further has failed to make a determination on Threshold's claim for

19  coverage within a reasonable time frame, which is tantamount to a denial of Threshold's claim for

20  coverage of the property damage and business interruption loss

21       19.    By its failure or refusal to pay or reimburse Threshold's property damage and

22  business interruption loss (including professional fees) as a result of the roof collapse, failure or

23  refusal fully to acknowledge its insuring obligations to Threshold, and/or failure or refusal to

24  make a determination of Threshold's claim for coverage in a reasonable time frame, Affiliated

25  FM has breached its contract of insurance with Threshold.

26       20.    As a direct result of the foregoing breaches of contract, Threshold has suffered,

27  and is entitled to recover, money damages in an amount to be proven at trial, including all

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28

1-SF/7642692.1

4

1  incidental and consequential damages proximately resulting from the defendant's breaches of

2  contract.

3  ### PRAYER FOR RELIEF

4  WHEREFORE, Threshold prays as follows:

5      1.    That this Court determine and declare that Defendant Affiliated FM is obligated to

6  pay in full Threshold's property damage and business interruption loss resulting from the

7  December 19, 2005 roof collapse;

8      2.    That this Court award damages against Affiliated FM for breach of contract in an

9  amount to be determined at trial, including all incidental and consequential damages proximately

10  resulting from defendant's breaches of contract;

11      3.    For reasonable and necessary costs, expenses, professional fees, and attorney fees

12  incurred by Threshold to enforce this action and its rights under the contract of insurance;

13      4.    For prejudgment interest in an amount to be proved at trial;

14      5.    Such orders, including injunctive relief, as are necessary to effectuate this Prayer

15  for Relief, or to preserve this Court's jurisdiction over the parties and issues described in this

16  complaint;

17      6.    Such other and further relief as this Court deems just and proper.

18  Dated: December 17, 2007              MORGAN, LEWIS & BOCKIUS LLP

19

20                                  By

21                                      Dawn S. Pittman
                                        Attorneys for Plaintiff
22                                      *Threshold Enterprises, Ltd.*

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7642692.1                          5

                                  COMPLAINT

1

2                                    **JURY TRIAL DEMAND**

3              Plaintiff demands trial by jury of any and all issues so triable.

4         Dated: December 17, 2007
                                              MORGAN, LEWIS & BOCKIUS LLP
5

6                                        By
                                              Dawn S. Pittman
7                                             Attorneys for Plaintiff
                                              *Threshold Enterprises, Ltd.*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7642692.1                               6
                                        COMPLAINT

# EXHIBIT B

**F I L E D**

DEC 18 2007

ALEX CALVO, CLERK
BY STEPHEN CARLTON
DEPUTY, SANTA CRUZ COUNTY

1  MORGAN, LEWIS & BOCKIUS LLP
   DAWN S. PITTMAN, SBN 177962
2  One Market, Spear Street Tower
   San Francisco, California 94105-1126
3  Tel: 415.442.1000
   Fax: 415.442.1001
4
5  Attorneys for Plaintiff
   THRESHOLD ENTERPRISES LTD.
6
7
8           SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                      COUNTY OF SANTA CRUZ
10
                                                   By Fax
11  THRESHOLD ENTERPRISES, LTD., a        CASE NO. 158936
    Delaware corporation,
12
                  Plaintiff,             **AMENDED** COMPLAINT FOR BREACH
13                                       OF CONTRACT;
                                         JURY TRIAL DEMAND
          vs.
14
    AFFILIATED FM INSURANCE COMPANY,
15  a Rhode Island corporation, and DOES 1
    through 30,
16                                       Original Complaint Filed:
                  Defendants.            December 17, 2007
17

18
19       Threshold Enterprises, Ltd. ("Threshold"), for its complaint, alleges as follows:
20                                **Nature of Action**
21       1.      By this action, Threshold seeks damages from Defendant Affiliated FM Insurance
22  Company for property damage and business interruption losses resulting from a December 19,
23  2005 roof collapse at a building in Threshold's manufacturing complex in Scotts Valley,
24  California. Defendant issued an "All Risk" insurance policy issued to Threshold for the policy
25  period April 1, 2005 through April 1, 2006 which provides coverage for property damage and
26  business interruption loss incurred by Threshold.
27       2.      Threshold seeks damages for breach of contract against Defendant Affiliated FM
28  Insurance Company for its failure and refusal to meet their obligations to pay Threshold's loss,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO      1-SF/7642692.1

                        AMENDED COMPLAINT

including but not limited to amounts paid to repair property damage, salvage and re-test raw materials, procurement of lost raw materials, and reasonable professional fees paid to produce and certify the details of Threshold's business to determine the amount of loss payable under the Affiliated FM ProVision All Risk policy. Threshold contends that these amounts are covered in full by policy issued by defendant. Defendant disputes, or on information and belief will dispute, its insuring obligations to Threshold.

### The Parties and Jurisdiction

3.      Threshold is a corporation organized under the laws of the State of Delaware with its principal place of business in Scotts Valley, California.

4.      Defendant Affiliated FM Insurance Company is an insurance company organized under the laws of the State of Rhode Island with its principal place of business in a state other than California. At all relevant times, Affiliated FM was licensed to do, and was doing and transacting business, in the State of California.

5.      Threshold is unaware of the true identity, nature, and capacity of each of the defendants designated as Doe Defendants 1 through 30 herein. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Doe is in some manner responsible for the damages and injuries as are alleged in this complaint. Upon learning the true identity, nature and capacity of the Doe Defendants, plaintiff will amend this complaint to allege their true names and capacities.

6.      Threshold is informed and believes and thereon alleges that all material times herein alleged that the defendants, and each of them, were the agents, servants and employees of the other defendants and each of them.

7.      Venue is appropriate in this Court inasmuch as (i) the contract of insurance at issue was delivered to Threshold in Scotts Valley, California, (ii) the property damage and business interruption loss arise from acts or events within this Court's jurisdiction, (iii) the property damage and business interruption loss exceeds $25,000 (iv) the defendants are licensed to do, and have in fact conducted, business in the State of California and in the County of Santa Cruz; (v) Defendant Affiliated FM issued the insurance policy covering injuries arising from acts or events

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7642692.1

2

AMENDED COMPLAINT

1    within this Court's jurisdiction, (vi) performance under the contract of insurance issued by
2    Defendant Affiliated FM is sought in this venue.

3                                    **The Insurance Contract**

4        8.      Affiliated FM issued policy number TS182 ("the Policy") to Threshold for the
5    period April 1, 2005 through April 30, 2006. A copy of the policy is attached hereto as Exhibit 1
6    to this complaint, and is incorporated, in full, by this reference.

7        9.      Threshold is the named insured under the Policy. The Policy was delivered to
8    Threshold in the State of California, and all premiums for the policy were paid by Threshold from
9    the State of California.

10       10.     Threshold timely has initiated this suit as the Policy provides that an action for
11   recovery of any claim under the Policy may be filed against defendant Affiliated FM within two
12   years after the date on which the direct physical loss or damage first commenced or occurred.

13       11.     Threshold has satisfied all terms and conditions of insurance policy including,
14   among other things, payment of substantial premiums. Alternatively, the performance of such
15   terms and conditions has been waived and excused by the defendant's conduct. In either event,
16   Threshold is entitled to the full benefit of its insurance coverage.

17

18               **The Affiliated FM Insurance Policy Responds To The Threshold
                     Property Damage and Business Interruption Loss**

19       12.     The Policy issued by defendant provides insurance coverage for "all risks of direct
20   physical loss or damage to the insured property" of Threshold properties, including without
21   limitation the building located at 23 Janis Way in Scotts Valley, California. Further, the Policy,
22   via the ProVision Business Interruption Endorsements, provides coverage for "actual loss of
23   Extra Expense sustained by the Insured" and "the actual loss sustained by the Insured due to the
24   necessary interruption of business during the period of interruption, and 30 consecutive days
25   following that period." The Threshold "loss" resulting from the December 19, 2005 roof collapse
26   at the Threshold property located at 23 Janis Way, includes but is not limited to the property
27   damage to the building and fixtures of the warehouse, damaged inventory, stock, and raw

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7642692 1

3

AMENDED COMPLAINT

product, the resulting business interruption loss that continued until normal business operations were restored at Threshold, and the professional fees incurred to determine the amount of loss to Threshold. The loss that Threshold sustained triggers coverage under the defendant's policy.

13.    The Threshold loss is covered by the insurance policy issued by defendant, and does not come within any exception to, or exclusion from, coverage.

14.    Defendant Affiliated FM is obligated to pay in full Threshold's loss and has failed or refused to do so. Affiliated FM further has failed to make a determination on Threshold's claim for coverage within a reasonable time frame.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

15.    Threshold repeats and realleges the allegations in paragraphs 1 through 14, which are incorporated, in full, by this reference.

16.    Threshold notified Affiliated FM of the December 19, 2005 roof collapse and the property damage and business interruption loss resulting therefrom, and has requested payment of the all loss amounts owed to Threshold pursuant to the terms of the relevant insurance policy and applicable law.

17.    Affiliated FM has failed or refused fully to pay and reimburse the loss amounts incurred by Threshold and/or fully to acknowledge their insuring obligations to Threshold.

18.    Affiliated FM further has failed to make a determination on Threshold's claim for coverage within a reasonable time frame, which is tantamount to a denial of Threshold's claim for coverage of the property damage and business interruption loss

19.    By its failure or refusal to pay or reimburse Threshold's property damage and business interruption loss (including professional fees) as a result of the roof collapse, failure or refusal fully to acknowledge its insuring obligations to Threshold, and/or failure or refusal to make a determination of Threshold's claim for coverage in a reasonable time frame, Affiliated FM has breached its contract of insurance with Threshold.

20.    As a direct result of the foregoing breaches of contract, Threshold has suffered, and is entitled to recover, money damages in an amount to be proven at trial, including all

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7642692.1                              4

AMENDED COMPLAINT

1  incidental and consequential damages proximately resulting from the defendant's breaches of

2  contract.

3  ### PRAYER FOR RELIEF

4  WHEREFORE, Threshold prays as follows:

5  1.    That this Court determine and declare that Defendant Affiliated FM is obligated to

6  pay in full Threshold's property damage and business interruption loss resulting from the

7  December 19, 2005 roof collapse;

8  2.    That this Court award damages against Affiliated FM for breach of contract in an

9  amount to be determined at trial, including all incidental and consequential damages proximately

10  resulting from defendant's breaches of contract;

11  3.    For reasonable and necessary costs, expenses, professional fees, and attorney fees

12  incurred by Threshold to enforce this action and its rights under the contract of insurance;

13  4.    For prejudgment interest in an amount to be proved at trial;

14  5.    Such orders, including injunctive relief, as are necessary to effectuate this Prayer

15  for Relief, or to preserve this Court's jurisdiction over the parties and issues described in this

16  complaint;

17  6.    Such other and further relief as this Court deems just and proper.

18  Dated: December 18, 2007                      MORGAN, LEWIS & BOCKIUS LLP

19

20                                   By _____

21                                      Dawn S. Pittman
                                       Attorneys for Plaintiff
22                                      *Threshold Enterprises, Ltd.*

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7642692.1                           5

AMENDED COMPLAINT

1

2          **JURY TRIAL DEMAND**

3          Plaintiff demands trial by jury of any and all issues so triable.

4      Dated: December 18, 2007                MORGAN, LEWIS & BOCKIUS LLP

5

6                                              By
                                                  Dawn S. Pittman
7                                                 Attorneys for Plaintiff
                                                  *Threshold Enterprises, Ltd.*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# CALIFORNIA STANDARD FORM FIRE INSURANCE POLICY



**Affiliated FM Insurance Company**
P. O. Box 7500
Johnston, Rhode Island 02919
1-800-343-7722

## A STOCK INSURANCE COMPANY

| DECLARATIONS | INSURED & MAILING ADDRESS | DATE OF ISSUE |
|---|---|---|

**DECLARATIONS**

**Policy No.**
TS182

**Account No.**
1-30358

**Previous Policy No.**
TS084

**Replaces Binder No.**

**INSURED & MAILING ADDRESS**

Threshold Enterprises, Ltd.
23 Janis Way
Scotts Valley, CA 95066

**DATE OF ISSUE**
04/01/2005

**Policy Period:**
12:01 A.M. Standard Time at
location of property involved.

**From:** 04/01/2005

**To:** 04/30/2006

**Years:** One year and one month

It is important that the written portions of all policies covering the same property read exactly alike. If they do not, they should be made uniform at once.
INSURANCE IS PROVIDED AGAINST ONLY THOSE PERILS AND FOR ONLY THOSE COVERAGES INDICATED BELOW BY A PREMIUM CHARGE AND AGAINST OTHER PERILS AND FOR OTHER COVERAGES ONLY WHEN ENDORSED HEREON OR ADDED HERETO

| PERIL(S) Insured Against and Coverage(s) Provided (Insert Name of Each) | AMOUNT | RATE | PREPAID POLICY PREMIUM | ANNUAL INSTALLMENT PREMIUM |
|---|---|---|---|---|
| As per Form S-1 | $ As per Form S-1 | $ Various | $ 58,500.00 | $ |

| | | | TOTAL PREMIUM FOR POLICY TERM | $ |
|---|---|---|---|---|

| Item No | Amount of Insurance | Co-Insurance | Description of Property Covered |
|---|---|---|---|
| | | | **As per Form S-1** |

Subject To Form No(s). attached hereto:

## As per Form S-1

This policy shall not be valid unless countersigned by the duly authorized agent of the Company at    Walnut Creek, California
Countersignature Date:

SF Operations
DRT/II

_Authorized Representative_

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO AND OF the above specified dollars premium, this Company, for the term of **years specified above** from **inception date shown above** At 12:01 A.M. (Standard Time) to **expiration date shown above** At 12:01 A.M. (Standard Time) at location of property involved, to an amount not exceeding the above specified dollars, does insure **the insured named above** and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all **LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED,** to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.
Assignment of this policy shall not be valid except with the written consent of this Company.
This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with any other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

OTP 30-X-B
2948 (1/02)

Page 1 of 2

**Concealment, fraud.** This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

**Uninsurable and excepted property.** This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named herein in writing, bullion or manuscripts.

**Perils not included.** This company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that the fire did not originate from any of the perils excluded by this policy; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises; (j) nor shall this company be liable for loss by theft.

**Other insurance.** Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

**Conditions suspending or restricting insurance.** Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of 60 consecutive days; or (c) as a result of explosion or riot, unless fire ensues, and in that event for loss by fire only.

**Other perils or subjects.** Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

**Added provisions.** The extent of the application of insurance under this policy and of the contribution to be made by this company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy or by statue is subject to change.

**Waiver provisions.** No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein.

**Cancellation of policy.** This policy shall be canceled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be canceled at any time by this company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.

**Mortgagee interests and obligations.** If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, the interest in this policy may be canceled by giving to the mortgagee a 10 days' written notice of cancellation.

If the insured fails to render proof of loss the mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of the mortgagee may be added hereto by agreement in writing.

**Pro rata liability.** This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

**Requirements in case loss occurs.** The insured shall give written notice to this company of any loss without unnecessary delay, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed;

and within 60 days after the loss, unless the time is extended in writing by this company, the insured shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required and obtainable, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if the originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

The insurer shall inform the insured that tax returns are privileged against disclosure under applicable law but may be necessary to process or determine the claim. The insurer shall notify every claimant that they may obtain, upon request, copies of claim-related documents. For purposes of this section, "claim-related documents" means all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs. However, attorney work product and attorney-client privileged documents, and documents that indicate fraud by the insured or that contain medically privileged information, are excluded from the documents an insurer is required to provide pursuant to this section to a claimant. Within 15 calendar days after receiving a request from an insured for claim-related documents, the insurer shall provide the insured with copies of all claim-related documents, except those excluded by this section. Nothing in this section shall be construed to affect existing litigation discovery rights.

**Appraisal.** In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located. Appraisal proceedings are informal unless the insured and this company mutually agree otherwise. For purposes of this section, "informal" means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally. In the event of a government declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this company but shall not be compelled.

**Adjusters.** If, within a six-month period, the company assigns a third or subsequent adjuster to be primarily responsible for a claim, the insurer, in a timely manner, shall provide the insured with a written status report. For purposes of this section, a written status report shall include a summary of any decisions or actions that are substantially related to the disposition of a claim, including, but not limited to, the amount of losses to structures or contents, the retention or consultation of design or construction professionals, the amount of coverage for losses to structures or contents and all items of dispute.

**Company's options.** It shall be optional with this company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within 30 days after the receipt of the proof of loss herein required.

182 **Abandonment.** There can be no abandonment to this com-
183 pany of any property.
184 **When loss payable.** The amount of loss for which this com-
185 pany may be liable shall be payable 60 days after proof of
186 loss, as herein provided. is received by this company and ascer-
187 tainment of the loss is made either by agreement between the
188 insured and this company expressed in writing or by the filing
189 with this company of an award as herein provided.
19  Suit. No suit or action on this policy for the recovery of any

191 claim shall be sustainable in any court of law or equity unless
192 all the requirements of this policy shall have been complied
193 with, and unless commenced within 12 months next after
194 inception of the loss.
195 **Subrogation.** This company may require from the insured
196 an assignment of all right of recovery against any part for
197 loss to the extent that payment therefor is made by this
198 company.

John J Coner
Secretary

S S Subramani
President

2048 (1/02)

**Affiliated FM**
**Insurance Company**

## General Change Endorsement

This endorsement is attached to and forms part of the following designated policy:

Account Number: 1-30358
Policy Number: TS182

Endorsement Number: 01
Effective Date of Change: Apr 01, 2005

## Insured:  Threshold Enterprises, Ltd.

All terms and conditions remain unchanged except:

The following changes are made to Form No. S-1, Declarations:

The sub-limit for 18, Fungus, mold or mildew under SECTION F, EXTENSIONS OF COVERAGE SUB-LIMITS, is amended to read as follows:

18. $1,000,000

The following clause is added under SECTION H, SPECIAL TERMS AND CONDITIONS:

4. **Financed Premium Clause**

Any return premium due under this policy will be paid to Premium Finance Specialists of CA, Inc. , Account No. CAC-75123  in accordance with the terms of the financed premium assignment notice issued on behalf of the First Named Insured and on file with this company.

BY:
**Authorized Representative**
**Daniel R. Thomson**
**Office: San Francisco Operations**
**DRT/cme**
**Date:  May. 17, 2005**

Page 1 of 1

# Declarations

## A. POLICY TERM:

April 1, 2005 to April 30, 2006

## B. NAMED INSURED:

Threshold Enterprises, Ltd., and its wholly or majority owned subsidiaries and any interest which may now exist or hereinafter be created or acquired which are owned, controlled or operated by any one or more of those named insureds.

## C. POLICY LIMIT:

This company's liability will not exceed the respective Sub-Limits of Liability shown elsewhere for the coverages involved.  However, in no event will the company's total Limit of Liability exceed $28,883,000 as a result of any occurrence, regardless of the number of perils, coverages or locations involved.

## D. INSURANCE PROVIDED:

All risks of direct physical loss or damage, as defined and limited herein, on Real Property, Personal Property, Stock and Supplies, Extra Expense, Gross Earnings excluding Ordinary Payroll, including the Extensions of Coverage applying at the following described locations:

### Location Schedule:

1. 11,13,19,21,23, 30 Janis Way & 51 El Pueblo Way, Scotts Valley, CA, 95066, Index No. 76580.84

## E. SUB-LIMITS:

Unless otherwise stated below, the following sub-limits will apply on a per occurrence basis and are part of, not in addition to, the above limit of liability.

| | | |
|---|---|---|
| 1. | $20,258,000 | Personal Property blanket at all scheduled locations |
| 2. | $7,500,000 | Gross Earnings excluding Ordinary Payroll |
| 3. | $1,000,000 | Extra Expense |

## F. EXTENSIONS OF COVERAGE SUB-LIMITS:

The following sub-limits will apply on a per occurrence basis, unless otherwise stated below, and are part of, not in addition to the above limit(s) of liability.

| | | |
|---|---|---|
| 1. | $100,000 | Fire Fighting Materials and Expenses |
| 2. | $100,000 | Professional Fees |
| 3. | $100,000 | Expediting Expenses |
| 4. | $100,000 | Trees, Shrubs, Plants and Lawns limit $1,000 per item |
| 5. | $250,000 | Pavements and Roadways |
| 6. | $50,000 | Land and Water Clean Up Expense (Annual Aggregate, for all coverages provided) |
| 7. | $50,000 | Installation Floater |
| 8. | $500,000 | Newly Acquired Property |
| 9. | $500,000 | Unnamed Locations Coverage |
| 10. | $250,000 | Fine Arts |
| 11. | $1,000,000 | Accounts Receivable |
| 12. | $250,000 | Valuable Papers and Records |
| 13. | $100,000 | Electronic Data Processing, Data and Media |

S-1 (1/04)

Affiliated FM Insurance Company Policy No. TS182

# Declarations

| 14. | $1,000,000 | Coverage A: Demolition & Increased Cost of Construction |
| | $1,000,000 | Coverage B: Demolition & Increased Cost of Construction |
| 15. | $500,000 | Errors and Omissions |
| 16. | $100,000 | Transit Coverage |
| 17. | $100,000 | A. Non-Certified Act of Terrorism Coverage |
| | $100,000 | B. Certified Act of Terrorism Coverage |
| | Not Covered | C. Terrorism Coverage for Locations Outside of the United States |
| 18. | Not Covered | Fungus, mold or mildew |

The above Extensions of Coverage sub-limits of liability will be the maximum payable for property damage and business interruption (if applicable) resulting from such property damage, or any combination thereof.

With respect to Items 7. Installation Floater, 8. Newly Acquired Property, 9. Unnamed Locations, the specified sub-limit is the maximum amount payable in any one occurrence regardless of the number of locations, coverages or occurrences involved. These items can not be combined with any other limits or sub-limits in this policy.

With respect to Terrorism Coverage in Item 17. A and C, each sub-limit will apply as an aggregate limit during any one policy year for Property Damage and Business Interruption (if provided) combined, and the Company's maximum liability for such coverage will not exceed such limit during the policy year regardless of the number of locations, coverages or occurrences involved. With respect to Certified Act of Terrorism Coverage in Item 17. B., each sub-limit will apply per occurrence. Terrorism Coverage in Items 17. A. and B., applies only to locations within the United States and its territories. The applicable annual aggregate limit of liability will not exceed the following sub-limits in the aggregate during any policy year.

$100,000 for Unnamed Locations Coverage and Property Removed From Described Locations, for Property Damage and Business Interruption (if provided) combined.

$100,000 for Flood (if provided) for Property Damage and Business Interruption (if provided) combined when caused by or resulting from Terrorism.

These limits shall not include the Actual Cash Value portion of fire damage caused by a Certified Act of Terrorism.

Terrorism Risk Insurance Act of 2002: As respects the United States, its territories and possessions and the Commonwealth of Puerto Rico any recovery under this Policy for any insured loss or damage from acts of terrorism, as covered under this Policy, may be partially reimbursed by the United States Government in accordance with the Terrorism Risk Insurance Act of 2002. Reimbursement by the United States Government will be under a formula established by Federal Law.

## G. DEDUCTIBLE AMOUNT:

The following deductible amounts shall apply per occurrence for loss or damage under this policy in the respective loss categories indicated:

1. Earth Movement Sprinkler Leakage - for loss or damage due to water or other substance discharged from any part of fire protection equipment caused by or resulting from Earth Movement (per occurrence for all coverages provided):

    For each occurrence, this company will not be liable for loss or damage to insured property unless the amount of loss or damage exceeds 5% of the combined value of property at the location where loss or damage occurs, in accordance with the valuation section of this policy and annual business interruption value as defined in the Business Interruption Endorsement attached to this policy at the time of such loss or damage at the location where loss occurs, subject to a minimum deductible amount of $50,000 per location. If coverage is provided for more than one location, this deductible percentage or minimum deductible amount will be calculated for and applied separately to each location.

# Declarations

2.  Electronic Data Processing Equipment, Data and Media Deductible:

In the event of loss or damage to Electronic Data Processing (EDP) Equipment, Data and Media insured by this policy caused by the malicious introduction of a machine code or instruction, no coverage is provided unless the period of interruption exceeds 48 hours beginning from the time of insured loss. The company's liability commences only after, and does not include, the Waiting Period specified.

If the period of interruption exceeds 48 hours, the insured loss will be calculated based upon the amount of insured loss in excess of the Waiting Period and subject to a combined deductible for all coverages of $50,000 per location.

Any period in which business operations or services would have not been maintained, or any period in which goods would have not been produced will not be included as part of or serve to reduce the effect of any Waiting Period.

3.  $25,000    Transit

4.  $50,000    All Other Losses.

## H.  SPECIAL TERMS AND CONDITIONS:

### 1.  Additional Named Insured:

The following is named as Additional Named Insured on property described below, as their interest may appear:

| Additional Named Insured | Location/Interest |
|---|---|
| Harrison Williams<br>1178 Chaparral Road<br>Pebble Beach, CA 93953 | 19 Janis Way<br>Scotts Valley, CA 95066 |

### 2.  Extended Terrorism Coverage Endorsement

#### Section E, Perils Excluded, Group I, Item 2. f. is amended to:

f.  Terrorism, including action taken to prevent, defend against, respond to or retaliate against Terrorism or suspected Terrorism, except to the extent provided in Section C, Extensions of Coverage, 17. Terrorism. However, if direct loss or damage by fire results from any of these acts (unless committed by or on behalf of the insured), then this Policy covers only to the extent the Actual Cash Value of the resulting direct loss or damage by fire to property insured. This coverage exception for such resulting fire loss or damage does not apply to any coverage provided in any Business Interruption Endorsement, if any, which may be a part of this Policy, or any extension of such coverage, or to any other coverages provided by this Policy.

Any act which satisfies the definition of Terrorism provided in Section H, Definitions, shall not be considered to he vandalism, malicious mischief, riot, civil commotion, or any other risk of physical loss or damage which may be covered elsewhere in this Policy.

If any act which satisfies the definition of Terrorism provided in Section H, Definitions also comes within the terms of the hostile or warlike action exclusion of this Policy in Section E, Group I, 2.a., the hostile or warlike action exclusion applies in place of this exclusion.

S-1 (1/04)

Affiliated FM Insurance Company Policy No. TS182

# Declarations

If any act excluded herein involves nuclear reaction, nuclear radiation or radioactive contamination, this exclusion applies in place of the nuclear hazard exclusion of this Policy, Section E, Group I, 1.

**Section C., Extensions of Coverage, Item 17. Terrorism is amended to;**

17. Terrorism:

This Policy covers physical loss or damage caused by or resulting from Terrorism, but only at scheduled locations specifically listed and described in the Insurance Provided paragraph of the Declarations section of this Policy and Unnamed Locations.

Any act which satisfies the definition of Terrorism provided in Section H, Definitions shall not be considered to be vandalism, malicious mischief, riot, civil commotion, or any other risk which may be covered elsewhere in this Policy. Amounts recoverable under this Additional Coverage are excluded from coverage elsewhere in this Policy.

This Additional Coverage does not cover loss or damage which also comes within the terms of the hostile or warlike action exclusion of this Policy, Section E, Group I, 2.a.

This Additional Coverage does not in any event cover loss or damage directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this policy contributing concurrently or in any other sequence to the loss:

a. the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

b. it is carried out by means of dispersal or application of pathogenic or poisonous biological or chemical materials; or

c. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

d. action taken to prevent, defend against, respond to or retaliate against Terrorism or suspected Terrorism.

**Section G. General Conditions, Basis of Valuation, Item a. 11, is amended to:**

On property that is damaged by fire and such fire is the result of Terrorism, the Actual Cash Value of the fire damage loss. Any remaining fire damage loss shall be adjusted according to the terms and conditions of Section G, General Conditions, Basis of Valuation, of this policy and shall be subject to the limits(s) of liability for Terrorism coverage as shown in the Declarations section of this policy for the Extension of Coverage for Terrorism.

3. **Terrorism Coverage Change**

Upon expiration of the coverages provided by endorsement and sub-limited in the **Declarations, EXTENSION OF COVERAGE SUB-LIMITS** 17. A. Non-Certified Acts of Terrorism and 17. B. Certified Acts of Terrorism:

A. The coverage and sub-limits provided in the **EXTENSION OF COVERAGE SUB-LIMITS** 17 will be replaced with the following:

| 17. | | |
|---|---|---|
| | Not Covered | A. Non-Certified Act of Terrorism Coverage |
| | Not Covered | B. Certified Act of Terrorism Coverage |
| | Not Covered | C. Terrorism for Locations Outside the United States |

S-1 (1/04)

Affiliated FM Insurance Company Policy No. TS182

# Declarations

$100,000     D. Terrorism except.

For the above **EXTENSION OF COVERAGE SUB-LIMITS** 17.D., the maximum liability in an occurrence will be the limit stated in 17.D. above.

Sub-limits 17. D. will not apply to any location(s) (if any) in the State of New York.

B.   The following deductible provision will be added to the **DEDUCTIBLE AMOUNT** section in the **Declarations** and will apply to Terrorism:

Terrorism (per occurrence for all coverages provided):

For each occurrence, this company will not be liable for loss or damage to insured property unless the amount of loss or damage exceeds 1% of the combined value of property at the location where loss or damage occurs, in accordance with the valuation section of this policy and annual business interruption value as defined in the Business Interruption Endorsement attached to this policy at the time such loss or damage at the location where loss occurs. If coverage is provided for more than one location, this deductible percentage amount will be calculated for and applied separately to each location subject to a maximum deductible amount of $1,000,000 per occurrence.

This deductible will not apply to any location(s) (if any) in the State of New York.

# Declarations

## I.  INDEX OF FORMS:

The following forms are made part of this policy:

| Title | Form No. | Edition |
|---|---|---|
| Declarations | S-1 | (1/04) |
| All Risk Property Coverage | PRO AR 2100 | (10/03) |
| Business Interruption Endorsement Extra Expense | PRO EE 2260 | (1/03) |
| Business Interruption Endorsement Gross Earnings Excluding Ordinary Payroll | PRO GE 2210 | (1/03) |
| California Amendatory Endorsement | 6488 | (6/00) |
| Non-Certified Terrorism Endorsement | 7181 S | (6/04) |
| Application of Policy to Date and Time Recognition | PRO DTR 2400 | (11/00) |

proVision

**Affiliated FM
Insurance Company**

# All Risk Property Coverage

## A. PERILS INSURED

This policy insures against all risks of direct physical loss or damage to the insured property except as excluded under this policy.

## B. PROPERTY INSURED

This policy covers property, unless excluded, at locations described in the declarations, or within 1,000 feet of the locations, that the Insured:

**(i)** Owns;

**(ii)** Operates;

**(iii)** Controls; or

**(iv)** Is under the obligation to insure for physical loss or damage, to the extent of such obligation.

### 1. Real Property

If this policy covers real property as shown in the declarations, it includes:

**a.** New construction;

**b.** Additions under construction;

**c.** Alterations and repairs to any building or structure;

**d.** Materials, equipment and supplies for new construction, additions, buildings or structures;

**e.** Temporary structures;

**f.** Machinery, equipment, and fixtures that are permanently attached to the building;

**g.** Personal property that is used to maintain or service the building;

All if not covered by other insurance. This policy also covers contractors' interests in a. through g. above to the extent that the Insured has agreed, prior to loss, to keep such interests insured.

### 2. Personal Property

If this policy covers personal property as shown in the declarations, it includes:

**a.** Improvements and Betterments in which the Insured has an insurable interest.

**b.** Personal property of officers and employees of the Insured, while at a described location.

**c.** Electronic data processing equipment, as defined in this policy.

**d.** The Insured's interest in and legal liability for property of others, while at a described location.

PRO AR 2100 (10/03)



### 3. Debris Removal:

This policy covers the reasonable and necessary expense of removal of debris from a described location remaining as the result of physical loss or damage to insured property from a peril insured by this policy.

**a.** There is no coverage for the expense of removing or disposing of:

1) Contaminated uninsured property; nor

2) The contaminant in or on such uninsured property;

Whether or not the contamination resulted from an insured peril.

Contaminant includes, but is not limited to, pollutant.

**b.** The company's total liability at each described location sustaining physical damage payable in any one occurrence, will not exceed the greater of:

1) 25% of the amount of physical damage payable at that location, (not including the cost of debris removal);

or

2) $5,000,000;

Except that the provisions of this clause will not increase any other amounts of insurance or limits of liability provided elsewhere in this policy.

### 4. Property Removed From Described Locations:

This policy covers insured property when removed from a described location to another location, including the reasonable expense of transportation, in order to avoid threatened physical loss or damage from a peril insured by this policy.

This coverage does not include property covered by other insurance.

This coverage applies for a period:

**a.** Of 120 days from the date of removal;

**b.** Not beyond the termination or expiration date of this policy;

Whichever first occurs.

### 5. Protection and Preservation of Property:

This policy covers the reasonable and necessary costs incurred to temporarily protect or preserve insured property, at a described location, in order to avoid or prevent immediately impending physical loss or damage from a peril insured by this policy.

This coverage does not cover costs incurred to temporarily protect or preserve property to avoid or prevent immediately impending physical loss or damage covered by Form PRO AR 2100, Section C., Extensions of Coverage, 17. Terrorism.



## C. EXTENSIONS OF COVERAGE

The following extensions of coverage are subject to all of the terms and conditions of this policy. The limit of liability for each coverage and the locations at which each applies are shown in the declarations.

### 1. Fire Fighting Materials and Expenses:

This policy is extended to cover expenses resulting from fire extinguishing materials:

a. Lost;

b. Expended; or

c. Destroyed;

In fighting a fire involving insured property.

This coverage is provided to the extent of:

1) The value only of such extinguishing materials; and

2) Fire-fighting expenses incurred or for which the Insured may be liable;

In connection with insured property.

There will be no liability for charges incurred by false alarm.

### 2. Professional Fees:

This policy is extended to cover the reasonable fees paid to:

a. Auditors;

b. Accountants;

c. Architects;

d. Engineers; or

e. Other professionals;

For producing and certifying particulars or details of the Insured's business in order to determine the amount of loss payable under this policy.

Professional fees do not include the expenses of:

1) Attorneys.

2) Public adjusters or any subsidiary or associated entity.

3) The Insured's own employees.



### 3. Expediting Expenses:

This policy is extended to cover the reasonable and necessary extra costs to expedite:

a. Temporary repairs to; and

b. Permanent repairs to or replacement of:

Insured property sustaining physical loss or damage insured by this policy.

Expediting Expenses do not include:

1) Expenses payable elsewhere in the policy.

2) The cost of permanent repair or replacement.

### 4. Trees, Shrubs, Plants and Lawns:

This policy is extended to cover direct physical loss or damage to:

a. Trees;

b. Shrubs;

c. Plants; and

d. Lawns;

Resulting from named perils as defined in this policy.

### 5. Pavements and Roadways:

This policy is extended to cover direct physical damage to:

a. Pavements; and

b. Roadways;

Resulting from named perils as defined in this policy.

### 6. Land and Water Clean Up Expense:

This policy is extended to cover the expense to clean up land or water at a described location. Coverage applies if the release, discharge, or dispersal of materials resulting in the clean up is caused by direct physical damage from a peril insured by this policy during the policy period.

There will be no coverage unless such expenses are reported to the company within 180 days of the date of direct loss.



### 7. Installation Floater:

This policy is extended to cover:

   a. Materials;

   b. Equipment;

   c. Machinery; and

   d. Supplies;

Designated for use in construction or installation projects by the Insured.

   1) Coverage begins at the time covered property arrives at the site of installation.

   2) Coverage ends when:

     a) The interest of the Insured ceases;

     b) The property has been accepted by the owner or purchaser;

     Whichever first occurs. Coverage does not extend beyond the expiration date of this policy.

Coverage provided by this extension is limited to property while located within: the fifty (50) United States; District of Columbia; Commonwealth of Puerto Rico; U.S. Virgin Islands; and Canada.

### 8. Newly Acquired Property:

This policy is extended to cover newly acquired property.

No coverage is provided under this clause for property while in transit.

This coverage terminates when the newly acquired property:

   1) Is reported to the company;

   2) 120 days after the date of acquisition; or

   3) At the termination or expiration of this policy;

Whichever first occurs.

Coverage provided by this extension is limited to property while located within: the fifty (50) United States; District of Columbia; Commonwealth of Puerto Rico; U.S. Virgin Islands; and Canada.

### 9. Unnamed Locations:

This policy is extended to cover insured property at a location:

   a. Not described in this policy; and

   b. Not otherwise insured.

No coverage is provided under this clause for property in transit.

Coverage provided by this extension is limited to property while located within: the fifty (50) United States; District of Columbia; Commonwealth of Puerto Rico; U.S. Virgin Islands; and Canada.



### 10. Fine Arts:

This policy is extended to cover fine arts.

No coverage is provided under this clause for:

a. Breakage of:

    1) Art;

    2) Glass windows;

    3) Statuary;

    4) Marble;

    5) Glassware; bric-a-brac; porcelain; or, similar fragile articles;

Unless such breakage results from named perils as defined by this policy.

b. Physical loss or damage as a result of restoring, repairing or retouching processes.

## 11. Accounts Receivable:

This policy is extended to cover all amounts due the Insured from customers, which the Insured is unable to collect, as a direct result of physical loss or damage insured by this policy to accounts receivable records.

Coverage includes:

a. Interest charges on any loan to offset impaired collections pending repayment of sums that can not be collected.

b. Collection expenses in excess of normal collection costs.

c. Other reasonable expenses incurred by the Insured in recreating records of accounts receivable.

## 12. Valuable Papers and Records:

This policy is extended to cover valuable papers and records as defined in this policy.

## 13. Electronic Data Processing (EDP):

This policy is extended to cover electronic data processing:

a. Media; and

b. Data;

As defined in this policy.



## 14. Demolition and Increased Cost of Construction:

If at the time of physical loss or damage insured by this policy, there is in force any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures, this policy covers as a result of enforcement of such law or ordinance as a direct result of such loss or damage:

**Coverage A:** The value of the physically undamaged portions of insured property, including any business interruption if provided, when these portions of the buildings or structures are demolished.

**Coverage B: 1)** The cost to demolish any physically undamaged portion of the buildings or structures.

**2)** The cost incurred to actually rebuild the physically damaged and the demolished portions of such buildings or structures with materials and in a manner to comply with the law or ordinance.

**a.** The total liability under Coverage B cannot exceed the lesser of the following:

**1)** The limit of liability indicated on the declarations; or

**2)** The actual cost of demolishing the physically undamaged portion of the buildings or structures involved, plus the lesser of the following:

**a)** The actual cost to rebuild on another site, but not including the cost of land; or

**b)** The cost to rebuild on the same site.

**b.** This policy will not pay for any cost of demolition, or increased cost of reconstruction, repair, debris removal, or loss of use that is required by the enforcement of any law or ordinance regulating any form of contamination, including, but not limited to, pollution; Fungus, Mold or Mildew.

## 15. Errors and Omissions:

This policy is extended to cover loss not payable solely because of an error or unintentional omission:

**a.** In the description or location of property insured under this policy, which existed at the inception date of this policy or in any subsequent amendments to this policy.

**b.** Through failure to include any location:

**1)** Owned;

**2)** Occupied; or

**3)** Newly acquired;

By the Insured at the inception date or during the term of this policy.

**c.** Which results in cancellation of insured property under this policy.

Coverage applies to the extent this policy would have provided coverage, had the error or unintentional omission not been made. Coverage does not apply:

**(1)** If coverage is found in whole or in part elsewhere in this policy.

**(2)** To any error or unintentional omission in the declaring of values, or the type of coverage or property.

Coverage provided by this extension is limited to property while located within: the fifty (50) United States; District of Columbia; Commonwealth of Puerto Rico; U.S. Virgin Islands; and Canada.

PRO AB 2100 (10/02)

proVision

## 16. Transit:

a. This policy is extended to cover the following personal property, not otherwise excluded, while in transit within the fifty (50) United States; District of Columbia; Commonwealth of Puerto Rico; U.S. Virgin Islands; and Canada:

1) Personal property owned by the Insured.

2) The interest of the Insured in, and legal liability for personal property of others while in the actual or constructive custody of the Insured.

3) Personal property shipped to others on Free on Board (FOB), Cost and Freight (C&F), or similar terms. The Insured's contingent interest in such shipments is admitted.

b. This extension includes:

1) Physical loss or damage to covered property occasioned by:

a. Acceptance of fraudulent bills-of-lading, shipping or messenger receipts by the Insured, Insured's agent, customer or consignee(s).

b. Any unauthorized person(s) representing themselves to be the proper party(ies) to receive the property for shipment or to accept it for delivery.

2) General average and salvage charges on shipments covered while waterborne.

c. This extension does not include:

1) Property shipped by mail.

2) Shipments by air unless made via regularly scheduled airlines.

3) Waterborne shipments via the Panama Canal or waterborne shipments to and from:

a) Alaska.

b) Hawaii.

c) Commonwealth of Puerto Rico.

d) U.S. Virgin Islands.

4) Any transporting vehicle.

5) Property excluded elsewhere in this policy.

d. Coverage begins:

1) From the time the property leaves the original point of shipment (including loading) for the commencement of transit; and

2) Continuously in the due course of transit;

Until delivered (including unloading) at destination.



e. Additional exclusions, conditions and provisions:

1) Coverage is excluded for any consequential loss beyond the direct physical loss or damage to the insured property.

2) Coverage is excluded for property insured under any import or export ocean marine insurance. Coverage on export shipments not insured under ocean marine policies does not extend beyond the time when the property is loaded on board overseas vessel or aircraft. Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessel or aircraft.

3) Permission is granted to the Insured, without prejudice to this insurance, to accept ordinary bills of lading used by carriers, including:

a) Released and/or under valued bills of lading.

b) Shipping or messenger receipts.

The Insured may waive subrogation against railroads under sidetrack agreements.

The Insured may not enter into any special agreement with carriers releasing them from their common law or statutory liability.

## 17. Terrorism:

This Policy covers physical loss or damage caused by or resulting from Terrorism, but only at scheduled locations specifically listed and described in the Insurance Provided paragraph of the Declarations section of this Policy.

Any act which satisfies the definition of Terrorism provided in Form PRO AR 2100, Section H, Definitions, or in any Terrorism Endorsement to this policy, shall not be considered to be vandalism, malicious mischief, riot, civil commotion, or any other risk which may be covered elsewhere in this Policy. Amounts recoverable under this Additional Coverage are excluded from coverage elsewhere in this Policy.

If any Business Interruption Endorsement is part of this Policy, any coverage provided by any such endorsement or by any extension of such coverage shall not apply to any loss resulting from the Actual Cash Value portion of direct physical loss or damage by fire caused by or resulting from Terrorism.

This Additional Coverage does not cover loss or damage which also comes within the terms of the hostile or warlike action exclusion of this Policy Form PRO AR 2100, Section E, Group I, 2.a.

This Additional Coverage does not in any event cover loss or damage directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this policy contributing concurrently or in any other sequence to the loss:

a. the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

b. it is carried out by means of dispersal or application of pathogenic or poisonous biological or chemical materials; or

c. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

d. action taken to prevent, defend against, respond to or retaliate against Terrorism or suspected Terrorism.



### 18. Fungus, Mold or Mildew:

This policy is extended to cover the direct physical loss or damage to covered property caused by or resulting from Fungus, Mold or Mildew, when:

Fungus, Mold or Mildew is the direct result of physical loss or damage by a peril otherwise covered by this policy and,

includes any cost or expense to clean up, remove, contain, treat, detoxify or neutralize Fungus, Mold or Mildew from covered property resulting from such covered loss.

## D. **PROPERTY EXCLUDED**

This policy does not insure against loss or damage to the following property unless coverage is specifically included in Section C, EXTENSIONS OF COVERAGE, or elsewhere in this policy:

1. Land, water, or any substance in or on land, pavement and roadways, trees, shrubs, plants and lawns, growing crops or standing timber, and animals.

2. Bridges and tunnels used for vehicular traffic, reservoirs, canals and dams.

3. Docks, piers, and wharves which are not a structural part of the building.

4. Furs and fur garments; jewels, jewelry, watches, pearls; precious and semi-precious stones, gold, silver, platinum and other precious metals and alloys; for loss caused by theft. This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes.

5. Currency, money, notes, securities, accounts, bills, tickets, tokens, evidences of debt, electronic data processing media and data, valuable papers and records, and fine arts.

6. Motor vehicles licensed for highway use or owned by officers and employees of the Insured; satellites, aircraft, and watercraft, except while on land and in the process of being manufactured including storage of aircraft or watercraft prior to being sold.

7. Personal property sold by the Insured under conditional sale, trust agreement, installment payment, or deferred payment plan after delivery to the customer.

8. Personal property in the custody of the Insured acting as a warehouseman, bailee for hire, or carrier for hire.

9. Underground mines, caverns, and mining property below the surface of the ground.

10. Property while in transit.

## E. **PERILS EXCLUDED**

**GROUP I.** This policy does not insure against loss or damage caused directly or indirectly by or resulting from any of the following. Loss or damage is excluded regardless of any other cause or event whether or not insured under this policy that contributes concurrently or in any sequence to the loss or damage.

1. Nuclear reaction or nuclear radiation or radioactive contamination. However:

   a. If physical damage by fire or sprinkler leakage results, then only that resulting damage is insured but not including any loss or damage due to nuclear reaction or nuclear radiation or radioactive contamination.

   b. This policy does insure against physical loss or damage directly caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from



processes conducted on the described location, provided that at the time of such loss or damage there is neither a nuclear reactor nor any new or used nuclear fuel on the described location. Such coverage does not apply to any act, loss or damage excluded in Form PRO AR 2100, Section E, Group I, 2 f., of this policy.

2. **a.** Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending or expected attack by:

   (1) Any government or sovereign power (de jure or de facto);

   (2) Any military, naval or air forces; or,

   (3) Any agent or authority of any party specified in (1) or (2) above.

   **b.** Discharge, explosion, or use of any nuclear device, weapon, or material employing or involving nuclear fission, fusion, or radioactive force, whether in time of peace or war, and regardless of who commits the act.

   **c.** Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an event.

   **d.** Seizure or destruction under quarantine or customs regulation, or confiscation by order of government or public authority.

   **e.** Risks of contraband or illegal transportation or trade.

   **f.** Terrorism, including action taken to prevent, defend against, respond to or retaliate against Terrorism or suspected Terrorism, except to the extent provided in Form PRO AR 2100, Section C, Extensions of Coverage, 17. Terrorism. However, if direct loss or damage by fire results from any of these acts (unless committed by or on behalf of the insured), and if the statutory law of the jurisdiction in which the physical loss occurs requires coverage for such direct physical loss or damage by fire, then this Policy covers only to the extent the Actual Cash Value of the resulting direct loss or damage by fire to property insured. This resulting exception for such resulting fire loss or damage does not apply to any coverage provided in any Business Interruption Endorsement, if any, which may be a part of this Policy, or any extension of such coverage, or to any other coverages provided by this Policy.

   Any act which satisfies the definition of Terrorism provided in Form PRO AR 2100, Section H, Definitions, or in any Terrorism Endorsement to this Policy, shall not be considered to be vandalism, malicious mischief, riot, civil commotion, or any other risk of physical loss or damage which may be covered elsewhere in this Policy.

   If any act which satisfies the definition of Terrorism provided in Form PRO AR 2100, Section H, Definitions, or in any Terrorism Endorsement to this Policy, also comes within the terms of the hostile or warlike action exclusion of this Policy Form PRO AR 2100, Section E, Group I, 2.a., the hostile or warlike action exclusion applies in place of this exclusion.

   If any act excluded herein involves nuclear reaction, nuclear radiation or radioactive contamination, this exclusion applies in place of the nuclear hazard exclusion of this Policy Form PRO AR 2100, Section E, Group I, 1.

3. Loss of market; loss of use; damage or deterioration arising from any delay, whether such delay is caused by a peril insured against or otherwise; loss caused by any legal proceeding.

4. **a.** Misappropriation;

   **b.** Conversion;

   **c.** Infidelity; or

pro**Vision**

**d.** Any dishonest act:

Whether committed alone or in collusion with others at any time, on the part of the Insured or any additional interest, employees, directors, officers, or agents of the Insured, or any person to whom the property may be entrusted (bailees for hire excepted). A willful act of destruction committed by employees of the Insured or others listed above, without the knowledge of the Insured, resulting in physical damage, is covered. Such coverage does not apply to any act excluded in Form PRO AR 2100, Section E, Group 1, .2 f., of this policy. However, theft by employees of the Insured or others listed above is not covered.

**5. a.** Unexplained loss, mysterious disappearance, or loss or shortage disclosed on taking inventory; except that this exclusion will not apply to property while in the custody of any bailee.

**b.** The voluntary parting with title or possession of property if induced by any fraudulent act or by false pretence.

**6. a.** Explosion; rupture; bursting; cracking; burning or bulging; of: steam boilers; steam turbines; gas turbines and steam engines;

**b.** Rupture; bursting; cracking; burning; or, bulging; of: pressure vessels; or, piping or apparatus; attached to any: steam boilers; steam turbines; gas turbines and steam engines;

While all such property is owned, operated or controlled by the Insured or under the Insured's obligation to insure.

This policy will cover physical loss or damage resulting from: the explosion of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, other than combustion gas turbines; or within the flues or passages which conduct the gases of combustion therefrom. Loss by fire ensuing from any of the above is covered by this policy.

**7.** The lack of power or other incoming service supplied from off the described location, however caused. If physical loss or damage insured by this policy results to insured property on the described location, the resulting damage is covered.

**8.** Any natural or man-made earth movement, including but not limited to:

**a.** Earthquake;

**b.** Landslide,

**c.** Mudflow;

**d.** Earth sinking, earth rising or shifting; or

**e.** Subsidence;

Resulting from, contributed to or aggravated by any of the above. Loss by fire, explosion or sprinkler leakage ensuing from any of the above is covered by this policy.

**9. a.** Flood.

**b.** Surface Water.

**c.** Tidal or seismic sea wave.

**d.** Rising (including overflowing or breaking of boundaries) of any body of water.

**e.** Seepage or influx of water from natural underground sources into basements or other floors.

proVision

The above a. through e. include, but are not limited to, water from:

1) Reservoirs;

2) Lakes;

3) Streams;

4) Rivers;

5) Ponds and harbors;

Whether such water is driven by wind or not, and includes spray from any of the foregoing. Loss resulting from, contributed to or aggravated by, any or all of the above is not covered. However, this policy covers physical loss or damage by a covered peril ensuing from any of the above.

10. The failure or malfunction of any Exterior Insulation and Finish System (EIFS) or the cost to repair the EIFS, including loss or damage caused by:

   a. Water penetration from any source;

   b. Failure of sealants in any form;

   c. Leeching of any kind;

   d. Discoloration of the exterior paint or finish, or

   e. Damage to materials between the EIFS and the interior finish of the building; damage to the interior finish of the building.

Any other loss or damage resulting from the failure or malfunction of the EIFS to prevent migration of water into the structure is excluded unless fire, explosion, or sprinkler leakage results, and then we will only pay for the damage caused by the fire, explosion, or sprinkler leakage.

11. Fungus, Mold or Mildew, except as provided under EXTENSIONS OF COVERAGE.

## GROUP II. This policy does not insure against loss or damage caused by the following perils; however, if loss or damage not excluded results, then that resulting loss or damage is covered.

1. Wear and tear, gradual deterioration, inherent vice, latent defect, vermin or insects.

2. Defects in materials, faulty workmanship, faulty construction or faulty design.

3. Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested, or otherwise being worked upon.

4. Dampness or dryness of atmosphere; changes of temperature; freezing, except damage to fire protective equipment caused by freezing; heating; shrinkage; evaporation; depletion; erosion; loss of weight; change in color, flavor, texture or finish; rust; corrosion.

5. Contamination, including but not limited to pollution.

6. Centrifugal force on rotating or moving parts of machinery; electrical, mechanical, or structural breakdown of machinery or equipment, including moving or stationary parts within or forming an integral part of such machinery or equipment.



7. Settling, cracking, shrinkage, bulging, or expansion of:

   a. Foundations.

   b. Walls.

   c. Floors.

   d. Roofs.

   e. Ceilings.

   This exclusion will not apply to loss or damage resulting from collapse of: a building or structure; or material part of a building or structure.

8. Exposure to rain, sleet, snow, sand or dust to personal property in the open.

9. Electric or magnetic injury or disturbance of any kind.

## F. SPECIAL EXCLUSIONS RELATING TO ELECTRONIC DATA PROCESSING (EDP) EQUIPMENT, MEDIA, AND DATA, VALUABLE PAPERS AND RECORDS, ACCOUNTS RECEIVABLE, AND TRANSIT COVERAGE:

1. Perils excluded with respect to electronic data processing equipment, media, and data, valuable papers and records, and accounts receivable are amended as follows:

   a. Group II, PERILS EXCLUDED, items 3, 4, 6 and 9 are deleted in their entirety.

   b. The following exclusions are added to Group I exclusions:

   1) With respect to electronic data processing data and media:

      12. Error in machine programming or machine instructions.

   2) With respect to valuable papers and records:

      13. Error or omission in processing or copying; all loss to property held as samples for sale or delivery after sale.

   3) With respect to accounts receivable:

      14. Bookkeeping, accounting, billing error or omission.

      15. Alteration, falsification, manipulation, concealment, destruction or disposal of records of accounts receivable; committed to conceal the wrongful giving, taking, obtaining or withholding of:

         (1) Money.

         (2) Securities.

         (3) Other property.



2. Perils excluded with respect to transit coverage are amended as follows:

Group I exclusions: Exclusions 5, 6, 7, 8, 9 and 10 are deleted in their entirety.

Group II exclusions: Exclusions 2, 3, 6, 7, 8 and 9 are deleted in their entirety.

## G. GENERAL CONDITIONS

### 1. First Named Insured:

The first named Insured shown in the declarations:

**a.** Is responsible for the payment of all premiums.

**b.** Will be the payee for any return premiums.

**c.** May authorize changes in the terms and conditions of this policy with the consent of the company.

This policy's terms can be amended or waived only by endorsement issued by this company and made a part of this policy.

Loss or damage will be adjusted with the first named Insured and payable as the first named Insured directs subject to: mortgagee; lender; or similar interests; as their interest may appear as shown on the certificates of insurance issued prior to loss by the Insured's broker and on file with this company. The effective date of any interests will be the issue date of the certificates unless a later date is specified on the certificate of insurance.

### 2. Inspections:

This company, at all reasonable times, will be permitted, but will not have the duty, to inspect insured property.

This company's:

**a.** Right to make inspections;

**b.** Making of inspections or inspection reports;

Will not constitute an undertaking, on behalf of or for the benefit of the named Insured or others, to determine or warrant that any property is safe or healthful.

### 3. Examination of Books and Records:

This company or its duly appointed representative will be permitted to:

**a.** Inspect the insured property;

**b.** Examine and audit books and records;

As they relate to this policy:

1) Any time during the policy period.

2) Up to three years after the expiration of coverage.



### 4. No Benefit to Bailee:

No person or organization, other than the Insured, having custody of insured property will benefit from this insurance.

### 5. Control of Property:

This policy will not apply to any location where there is an increase in hazard over which the Insured has control and knowledge. Any increase in hazard at one or more locations will not affect coverage at other locations where, at the time of loss or damage, the increase in hazard does not exist.

### 6. Deductible Clause:

This company will not be liable for loss or damage in any one occurrence until the amount of loss or damage exceeds the deductible amount shown in the declarations. If two or more deductibles apply to a single occurrence, then the largest deductible amount will apply. However, the policy allows for the application of:

**a.** Separate and distinct deductibles; and

**b.** Deductibles for specific loss categories;

As shown in the declarations.

### 7. Vacant and Unoccupied Locations:

Permission is given to cease operations and for locations to be vacant or unoccupied for:

**a.** Sixty (60) consecutive days; or

**b.** More than sixty (60) consecutive days with the written consent of this company;

Provided that the Insured maintains the same degree of:

**1)** Fire protection; and

**2)** Watch and alarm service;

As existed prior to the discontinuance of normal operations.

### 8. Other Insurance / Excess Insurance / Underlying Insurance:

If there is other insurance covering the same loss or damage that is covered:

**a.** Under this policy; or

**b.** Any other policy;

Then this insurance will apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted, whether or not such insurance is collectible.

Permission is granted for the Insured to purchase:

**1)** Excess insurance over the limit(s) of liability in this policy;

**2)** Underlying insurance on all or any part of the deductibles of this policy.



If the limits of the underlying insurance exceed the deductible that would apply under this policy, then the insurance provided by this policy will apply only after that portion that exceeds the deductible has been exhausted.

The existence of such underlying or excess insurance will not:

(1) Prejudice; or

(2) Reduce;

Any recovery payable under this policy.

### 9. Reinstatement of Limits After a Loss:

Except for those perils subject to an annual aggregate limit of liability, any loss or payment of any claim will not reduce the amount payable under this policy.

### 10. Liberalization Clause:

If any filed:

a. Endorsement;

b. Rules; or

c. Regulations;

Affecting this policy are revised by statute or otherwise so as to broaden this insurance without additional premium charge, such broadened insurance will:

1) Inure to the benefit of the Insured; and

2) Be effective as of the date of such change.

### 11. Transfer of Rights and Duties Under This Policy:

The Insured's rights and duties under this policy may not be transferred or assigned without this company's written consent.

### 12. Legal Action Against This Company:

No suit, action, or proceeding for the recovery of any claim under this policy, will be sustainable in any court of law or equity unless:

a. The Insured has fully complied with all terms and conditions of the policy; and

b. Initiated within two years after the date on which the direct physical loss or damage first commenced or occurred.

### 13. Subrogation:

The Insured must cooperate in any subrogation proceedings. This company may require from the Insured an assignment of all rights of recovery against any party for loss to the extent of this company's payment.



This company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss. No such waiver will affect the Insured's rights under this policy.

Any recovery from subrogation proceedings, less expenses incurred by this company in such proceedings, will be payable to the Insured in the proportion that the amount of:

**a.** Any applicable deductible; and

**b.** Any provable uninsured loss;

Bears to the entire loss amount.

## 14. Basis of Valuation:

Adjustment of loss amount(s) under this policy will be determined based on the cost of repairing or replacing (whichever is the lesser), at the time of loss, with materials or equipment of like kind and quality without deduction for depreciation, except as provided in this valuation section.

**a.** The following property, unless endorsed, will be valued at the time of loss as follows:

1) On stock in process: the value of raw materials and labor expended plus the proper proportion of overhead charges.

2) On finished goods manufactured by the Insured, and other goods sold awaiting delivery: the regular cash selling price at the location where loss occurs, less all discounts and charges which the merchandise would have been subject to had no loss occurred.

3) On raw materials, supplies, and other merchandise not manufactured by the Insured: the replacement cost.

4) On property of others: the amount for which the Insured is legally liable, but not exceeding the replacement cost.

5) Replacement of trees, shrubs, plants, and lawns will be limited to standard local nursery stock.

6) Fine Arts are valued at the lesser of:

a) The cost to repair or restore the article to the condition that existed immediately prior to the loss;

b) The cost to replace the article; or

c) The value designated for the article on the schedule of fine arts on file with this company.

In case of physical loss or damage to an article that is part of a pair or a set, this company will pay the full amount of the value of such pair or set only if: the damaged article cannot be repaired or restored to its condition before the loss; and the Insured surrenders the remaining article or articles of the pair or set to the company.

7) Accounts receivable is valued at the sum due which the Insured is unable to collect from customers, and includes:

a) Interest charges on any loan to offset impaired collections pending repayment of such sums that can not be collected;

b) Collection expenses in excess of normal collection cost; and



c) Other reasonable expenses incurred by the Insured in recreating records of accounts receivable.

If the Insured is unable to accurately determine the amount of outstanding accounts receivable at the time of loss, the following method will be used:

a. Determine the total average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which loss occurs; and

b. Adjust that total for any fluctuations in the month in which loss occurs, or for any demonstrated variance for that month.

Unearned interest charges and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted.

After payment of loss by the company, all amounts recovered by the Insured on accounts receivable for which the Insured has been indemnified will belong to the company and be paid to the company by the Insured up to the total amount of loss paid by this company. All recoveries in excess or such amounts will belong to the Insured.

8) Valuable Papers and Records is valued at: the cost to replace or restore the property with other of like kind and quality including the cost of researching, gathering and/or assembling information. If the information is not replaced or restored with other of like kind or quality, the company will pay the blank value of such valuable papers and records.

9) Electronic Data Processing Media and Data is valued at: the cost to replace or restore the property with other of like kind and quality including the cost of researching, gathering and/or assembling information. If the information is not replaced or restored with other of like kind or quality, the company will pay the blank value of such electronic data processing media.

10) Property while in transit is valued as follows:

a) For property shipped to or for account of 'he Insured: the actual invoice to the Insured, together with such costs and charges (including the commission of the Insured as selling agent) as may have accrued and become legally due on such property.

b) For property that has been sold by the Insured and shipped to or for account of the purchaser (if covered by this policy): the amount of the Insured's selling invoice, including prepaid or advanced freight.

c) For property not under invoice: the actual cash market value at point of destination on the date of disaster, less any charges saved which would have become due and payable upon delivery at destination.

11) On property that is damaged by fire and such fire is the result of Terrorism and the statutory law of the jurisdiction in which the physical loss occurs requires coverage for such direct physical damage by fire, the Actual Cash Value for any portion of the fire damage loss which exceeds the limit of liability provided in the Declarations section of this policy.

b. The Insured may:

1) Voluntarily elect to rebuild on another site provided that such rebuilding does not increase the amount of loss or damage which would otherwise be payable to rebuild at the current site.



   2) Submit claim based on the actual cash value of the property lost or damaged until repair or replacement has been completed. The Insured may still claim for the additional coverage which replacement cost provides if notification of intention to do so is received by the company within 180 days after the loss or damage.

c. Replacement cost is subject to all the terms, conditions and limitations of the policy (including any endorsements) and the following additional provisions:

   1) The Insured must execute repairs or replacement with due diligence and dispatch.

   2) In no event will payment exceed the actual repairs, replacement, or the limit of liability stated in this policy, whichever is the lesser.

   3) If during the term of this policy, any insured real property is offered for sale, the liability for loss or damage will not exceed the lesser of:

      a) The price of the offer for sale while the property is offered for sale (with proper deduction for the value of any land); or,

      b) The cost to repair or replace.

If the Insured fails to comply with any of the valuation provisions or does not repair or replace the property within two (2) years from the date of loss, the basis of valuation will revert to the actual cash value as defined in this policy.

## 15. Brands and Labels:

If branded or labeled property covered by this policy is damaged and this company elects to take all or any part of such property at the value established by the terms of this policy, the Insured may at Insured's own expense:

a. Stamp "salvage" on the property or its containers; or

b. Remove or obliterate the brands or labels;

If doing so will not physically damage the property.

The Insured must re-label the property or containers in compliance with the requirements of law.

## 16. Pairs and Sets:

In the event of physical loss or damage to any part of a pair or set, the company may:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between the value of the pair or set:

   1) Before the loss; and

   2) After the loss.

In the event of physical loss or damage to any part of insured property consisting of several parts when complete, the company will only pay for the value of the lost or damaged part.



## 17. Cancellation:

The first named Insured may cancel this policy at any time by:

**a.** Surrendering the policy to the company.

**b.** Mailing or delivering to the company advance written notice of cancellation.

This company may cancel this policy by:

**1.** Mailing; or

**2.** Delivering;

Written notice of cancellation to the first named Insured at the address as stated in the declarations, not less than:

**a)** Sixty (60) days; or

**b)** Ten (10) days for non-payment of premium;

Before the effective date of cancellation.

Proof of mailing or delivery will be sufficient proof of notice.

This company will return premium to the Insured:

**1)** On a pro rata basis if this company cancels the policy.

**2)** 90% of the pro rata basis if the Insured cancels the policy.

## 18. Currency:

Any amounts specified in this policy, including but not limited to premium, limit(s) of liability, deductible(s), and loss payable will be considered to be in Canadian currency for locations situated in Canada and in United States of America currency for all other locations, unless specified otherwise.

## 19. Conformity to Statute:

Terms of this policy, which are in conflict with the statutes of the jurisdiction where the insured property is located, are amended to conform to such statutes.

## H. DEFINITIONS

**Actual Cash Value** is the replacement value of the property, at the time and place of the loss or damage, less proper deduction for depreciation.

**Electronic Data Processing (EDP) Data** is defined as all information stored on media devices, including: facts, concepts, or computer programs; converted to a form usable in a data processing operation.



**Electronic Data Processing (EDP) Equipment** is defined as data processing systems, component parts and related peripheral equipment including air conditioning and fire protection equipment used solely for data processing operations. Electronic data processing equipment does not include electronic systems that control production machinery or the production machinery itself or any memory bank attached to the production machinery. Electronic data processing equipment does not mean property in the course of manufacture or property you hold for sale or demonstration.

**Electronic Data Processing (EDP) Media** is defined as all materials on which data is recorded including: magnetic tapes; disc packs; paper tapes; and cards; used in data processing equipment. Electronic data processing (EDP) media does not include any memory bank attached to production machinery or any property you hold for sale or demonstration.

**EIFS System** means any exterior cladding or finish system used on any part of any structure and consisting of: a rigid or semi-rigid insulation board made of expanded polystyrene or other materials; adhesive and/or mechanical fasteners used to attach the insulation board to the substrate; a reinforced base coat; and a finish coat providing surface texture and color, including sealant around windows and other penetrations.

**Finished Goods** are stock manufactured or processed by the Insured which is ready for packing, shipment, or sale.

**Fungus, Mold or Mildew** means: fungus, including but not limited to mildew and mold; protist, including but not limited to algae and slime molds; wet rot; dry rot; bacterium; or chemical matter, or compound produced or released by a fungus, a protist, wet rot, dry rot, or a bacterium, including but not limited to toxins, spores, fragments and metabolites such as microbial volatile organic compounds. Protist means any of the organisms of the kingdom Protista, which includes protozoans, slime molds, and certain algae.

**Named Perils** are defined as: fire, lightning, wind and/or hail, explosion, smoke, impact from aircraft and vehicles, objects falling from aircraft, strike, riot, civil commotion, vandalism, theft, attempted theft, sprinkler leakage, or collapse of buildings.

**Pollutant** means any solid, liquid, gaseous or thermal irritant or substance, including, but not limited to, fiber, smoke, vapor, soot, fumes, acids, alkalis, chemicals, biological agents and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

**Pollution** means the presence, discharge, dispersal, seepage, migration, release or escape of any material, which causes or threatens damage to human health or human welfare, or causes or threatens damage, deterioration, and loss of value, marketability, or loss of use to insured property. Such material includes but is not limited to fungi, bacteria, virus, hazardous substances, or pollutants.

**Raw Materials** are materials and supplies in the state in which the Insured receives them for conversion by the Insured into finished goods.

**Sewer Back Up** means water which backs up through sewers or drains that are below ground level. Sewer Back Up does not mean loss or damage from water which backs up through sewers or drain that are below ground level as a result of flood, surface water, tidal or seismic sea wave or rising of any body of water.

**Stock in Process** is raw materials or stock, which has undergone any aging, seasoning, mechanical or other process or manufacture, but which is not finished goods.



**Terrorism** is defined as:

Any act, involving the use or threat of: force, violence, dangerous conduct, interference with the operations of any business, government or other organization or institution, or any similar act.

When the effect or apparent purpose is:

To influence or instill fear in any government (de jure or de facto) or the public, or any segment of either; or to further or to express support for, or opposition to, any political, religious, social, ideological or similar type of objective or position.

**Valuable Papers and Records** are inscribed, printed or written: documents; manuscripts or records including abstracts; and, books, deeds, drawings, films, maps, or mortgages. Valuable Papers are not: money, securities and stamps; converted data programs or instructions used in the Insured's data processing operations; or, materials on which data is recorded.

**Water Damage** means direct damage by water in any one occurrence, except water damage resulting from flood as described elsewhere in the policy.

**Wind and/or Hail** means direct and/or indirect action of wind and/or hail and all loss or damage resulting therefrom whether caused by wind, by hail or by any other peril other than fire or explosion including but not limited to, loss or damage caused when water, in any state, rain, sleet, snow, sand, dust or any other substance, material, object or thing is carried, blown, driven or otherwise transported by wind onto or into said location.



# Business Interruption Endorsement
# Extra Expense Endorsement

## 1. Coverage Provided:

In consideration of additional premium, this policy is extended to cover at locations described in the declarations:

A. The actual loss of Extra Expense sustained by the Insured:

    1) Resulting from direct physical loss or damage from perils insured by this policy; and

    2) To insured property utilized by the Insured.

For purposes of this endorsement: **Extra Expense** is defined as:

The excess, if any, of the total cost incurred during the period of interruption:

    a) Chargeable to conduct the Insured's business;

    b) Over and above the total cost that would have been incurred to conduct the business during the same period;

Had direct physical loss or damage insured by this policy not occurred.

## 2. Conditions:

A. This company will give consideration to the:

    1) Experience of the business before and the probable experience after the period of interruption; and

    2) Continuation of only those normal charges and expenses that would have existed had no interruption of production, or suspension of business operations or services occurred;

To determine the Extra Expense loss payable.

B. The company will not be liable for any loss payable under this endorsement to the extent that it can be reduced by the Insured through use of any suitable property or service:

    1) Owned or controlled by the Insured; or

    2) Obtainable from other sources.

Any salvage value of such property remaining at the end of the period of interruption for property obtained above will be taken into consideration in the adjustment of any loss.

## 3. Limit of Liability:

The company's maximum limit of liability for any loss under this endorsement will not exceed the limit of liability shown in the declarations.



## 4. Period of Interruption:

A. For purposes of determining the loss payable under this endorsement, the period of interruption is defined as:

    1) The period from the time of direct physical damage insured by this policy;

To the time:

    2) When, with due diligence and dispatch, physically damaged property could be:

        a) Repaired or replaced; and

        b) Made ready for operations under the same or equivalent physical and operating conditions that existed prior to such damage;

    Not to be limited by the expiration date of this policy.

B. The period of interruption for alterations or additions to existing property and property under the course of construction will be determined from:

    1) The period from the time of direct physical damage insured by this policy when operations would have begun if the direct physical loss or damage had not occurred;

To the time:

    2) When, with due diligence and dispatch, physically damaged buildings and equipment could be:

        a) Repaired or replaced; and

        b) Production or business operations would have commenced;

    Had no physical damage occurred to such insured property.

C. The period of interruption:

    1) Will include that period for which physically:

        a) Damaged; or

        b) Destroyed;

    Raw materials would have supplied operating needs.

    2) Will not include any additional time resulting from the inability to procure suitable:

        a) Raw materials; and

        b) Supplies;

    To replace those physically damaged or destroyed.

    The additional time required for:

    (1) Making change(s) to the buildings, or structures, for any reason, except as set forth in the Demolition and Increased Cost of Construction extension contained with in the policy to which this endorsement is attached;



(2) Restaffing or retraining employees:

Is not included within the period of interruption and is not covered.

D. The period of interruption shall not exceed 12 months from the inception of physical damage caused by or resulting from Terrorism. This limit for Business Interruption coverage shall not be considered additive to any other Business Interruption time limit or to any period of interruption applying to any coverage provided by any Business Interruption endorsements, and shall be subject to the limit of liability for the applicable terrorism coverage.

## 5. Additional Coverages:

### A. Civil Authority:

Coverage is provided when access to the described location is prohibited by order of civil authority. This order must be given as a direct result of physical loss or damage from a peril of the type insured by this policy. The company will be liable for the actual amount of loss sustained at such location for a period of up to 30 consecutive days from the date of this action.

### B. Transmission Facilities:

This policy covers loss resulting from physical loss or damage insured by this policy to:

1) Electrical and telecommunication equipment; and

2) Electrical, telecommunication, fuel, water, steam, and, refrigeration transmission lines;

All situated on or with in 1000 feet of the described location.

Coverage is excluded for loss resulting from:

a) The lack of incoming services described above; or

b) Physical loss or damage to transmission facilities providing these services;

That occurs beyond 1000 feet of the described location.

## 6. Exclusions:

This endorsement, and any extension of coverage to this endorsement, do not cover:

a. Any loss during any period in which goods would not have been produced.

b. Any loss during any period in which business operations or services would not have been maintained.

c. Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license, or order.

d. Any loss due to:

1) Fines or damages for breach of contract.

2) Late or non-compliance of orders or penalties of any nature whatsoever.

3) Any other consequential or remote loss.



e. Any loss resulting from physical loss or damage to property in transit.

f. Any loss resulting from physical loss or damage to finished products manufactured by the Insured or the time required for their reproduction.

g. Any loss resulting from the Actual Cash Value portion of direct physical loss or damage by fire caused by or resulting from Terrorism.

All other terms and conditions of this policy remain unchanged.



## Business Interruption Endorsement
## Gross Earnings Form Excluding Ordinary Payroll

### I. Coverage Provided:

In consideration of additional premium, this policy is extended to cover at locations described in the declarations:

A. The actual loss sustained by the Insured due to the necessary interruption of business during the period of interruption, and 30 consecutive days following that period;

B. Expenses, over and above normal operating expenses, that must be incurred by the Insured:

　　1) In making up lost production; and

　　2) To reduce loss payable under this endorsement;

Resulting from direct physical loss or damage from perils insured by this policy to insured property utilized by the Insured. This company will not pay for any expense more than it would have paid had the Insured been unable to make up any lost production, or to continue any business operations or services.

If the Insured is wholly or partially prevented from producing goods or from continuing business operations or services and is unable to:

a. Make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted); or

b. Continue business operations and services;

By using any property owned or controlled or obtainable from other sources or through working extra time or overtime; then this company will be liable for the actual loss sustained during the period of interruption.

Coverage is provided for the following:

**Gross Earnings,** less all charges and expenses, that do not necessarily continue during the period of interruption.

For purposes of this endorsement: **Gross Earnings** is defined as:

**For manufacturing operations:** The net sales value of production less the cost of all:

a) Ordinary Payroll;

b) Raw stock; and

c) Materials and supplies;

Utilized in such production;

Plus all other earnings derived from operations of the business.

**For mercantile or non-manufacturing operations:** The total net sales less the cost of all:

a) Ordinary Payroll;

b) Merchandise sold;

c) Materials and supplies consumed in the operations; or



d) Service rendered by the Insured;

Plus all other earnings derived from the operation of the business.

For purposes of this endorsement: **Ordinary Payroll** is defined as:

a) Wages of all employees except officers, executives, department managers, and employees under contract or similar key employees; and

b) Includes taxes and charges dependent on the payment of those wages.

## 2. Conditions:

This company will give consideration to the:

1) Experience of the business before and the probable experience after the period of interruption; and

2) Continuation of only those normal charges and expenses that would have existed had no interruption of production, or suspension of business operations or services occurred;

In determining the Gross Earnings loss payable.

## 3. Limit of Liability:

The company's maximum limit of liability for any loss under this endorsement will not exceed the limit of liability shown in the declarations.

## 4. Period of Interruption:

A. For purposes of determining the loss payable under this endorsement, the period of interruption is defined as:

1) The period from the time of direct physical damage insured by this policy.

To the time:

2) When, with due diligence and dispatch, physically damaged property could be:

a) Repaired or replaced; and

b) Made ready for operations under the same or equivalent physical and operating conditions that existed prior to such damage;

B. The period of interruption for alterations or additions to existing property and property under the course of construction will be determined from:

1) The period from the time of direct physical damage insured by this policy when operations would have begun if the direct physical loss or damage had not occurred;

To the time:

2) When, with due diligence and dispatch, physically damaged buildings and equipment could be:

a) Repaired or replaced; and

b) Production or business operations would have commenced;

Had no physical damage occurred to such insured property.



C. The period of interruption:

   1) Will include that period for which physically:

      a) Damaged; or

      b) Destroyed;

     Raw materials would have supplied operating needs.

   2) Will not include any additional time resulting from the inability to procure suitable:

      a) Raw materials; and

      b) Supplies;

     To replace those physically damaged or destroyed.

  The additional time required for:

  (1) Making change(s) to the buildings, or structures, for any reason, except as set forth in the Demolition and Increased Cost of Construction extension contained with in the policy to which this endorsement is attached;

  (2) Restaffing or retraining employees;

  Is not included within the period of interruption and is not covered.

D. The period of interruption shall not exceed 12 months from the inception of physical damage caused by or resulting from Terrorism. This limit for Business Interruption coverage shall not be considered additive to any other Business Interruption time limit or to any period of interruption applying to any coverage provided by any Business Interruption endorsements, and shall be subject to the limit of liability for the applicable terrorism coverage.

## 5. Additional Coverages:

### A. Civil Authority:

  Coverage is provided when access to the described location is prohibited by order of civil authority. This order must be given as a direct result of physical loss or damage from a peril of the type insured by this policy. The company will be liable for the actual amount of loss sustained at such location for a period of up to 30 consecutive days from the date of this action.

### B. Transmission Facilities:

  This policy covers loss resulting from physical loss or damage insured by this policy to:

   1) Electrical and telecommunication equipment; and

   2) Electrical, telecommunication, fuel, water, steam, and, refrigeration transmission lines;

  All situated on or with in 1000 feet of the described location.

  Coverage is excluded for loss resulting from:

   a) The lack of incoming services described above; or



b) Physical loss or damage to transmission facilities providing these services;

That occurs beyond 1000 feet of the described location.

## 6. Exclusions:

This endorsement, and any extension of coverage to this endorsement, do not cover:

a. Any loss during any period in which goods would not have been produced.

b. Any loss during any period in which business operations or services would not have been maintained.

c. Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license, or order.

d. Any loss due to:

  1) Fines or damages for breach of contract.

  2) Late or non-compliance of orders or penalties of any nature whatsoever.

  3) Any other consequential or remote loss.

e. Any loss resulting from physical loss or damage to property in transit.

f. Any loss resulting from physical loss or damage to finished products manufactured by the Insured or the time required for their reproduction.

g. Any loss resulting from the Actual Cash Value portion of direct physical loss or damage by fire caused by or resulting from Terrorism.

All other terms and conditions of this policy remain unchanged.

# CALIFORNIA

# AMENDATORY ENDORSEMENT

With respect to any insured location in the State of California that this policy is amended:

## CANCELLATION

The Insured may cancel this policy by returning it to the company or by giving it written notice and stating at what future date coverage is to cease.

During the first 60 days this policy is in effect, the company may cancel it or one or more of its parts for any reason. The company will give the Insured notice at least 10 days before the cancellation takes effect.

After this policy has been in effect 60 days, or if it is a renewal of a policy issued by the company it may cancel only for one or more of the following reasons:

1.  The premium has not been paid when due;

2.  Discovery of fraud or material misrepresentation in obtaining this insurance, or in pursuing a claim under this policy;

3.  A judgment by a court or an administrative tribunal that the Insured has violated a law of this state or the United States involving an act that materially increases a hazard insured against;

4.  Discovery of willful or grossly negligent acts or omissions, or of violations of state laws are regulations establishing safety standards, that materially increase a hazard insured against;

5.  Failure to implement reasonable loss control requirements which the Insured agreed to as a condition of the issue of this policy, or which were required in order to qualify for a particular rate or rating plan, if the failure materially increases a hazard insured against;

6.  A determination by the Insurance Commissioner that the loss of, or changes in, the company reinsurance would threaten its financial integrity or solvency;

7.  A determination by the Insurance Commissioner that a continuation of this policy would place the company in violation of the law or that continuation of coverage would threaten its solvency; or

8.  A change in the Insured's activities or property which results in a materially added, increased or changed hazard that is not included in the policy.

If the premium has not been paid when due or if fraud is discovered, the company will give the Insured notice at least 10 days before the cancellation takes effect. If the company cancels for one of the reasons described under items 3. through 8. of this condition, the company will give the insured notice at lease 30 days before the cancellation takes effect.

The company may cancel this policy by delivering or mailing written notice to the producer of record and to the Insured's mailing address last known to it. The notice will state the time that the cancellation is to take effect and include the reason for cancellation.

The Insured's return premium, if any, will be calculated according to the company rules. It will be refunded to the Insured with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

**NONRENEWAL AND RENEWAL WITH ALTERED TERMS** – The company  may elect not to renew or continue this policy by delivering or mailing written notice to the producer of record and to the Insured's mailing address last known to it. The notice will include the reason for the company action.

The company will give the Insured notice at least 60 days, but not more than 120 days, before the expiration or anniversary date.

The company will give the Insured the same number of days notice if it offer to renew this policy subject to a reduction of limits, elimination of coverages, an increase in deductibles, or an increase of more than 25 percent in the rate upon which the premium is based.

The company is not required to send a notice of nonrenewal if:

1.  This policy is transferred to or renewed by another insurer in its insurance group without changing policy "terms" or the rate on which the premium is based;

2.  The policy has been extended for 90 days or less after notice was given in accordance with the requirements of this condition;

3.  The Insured has obtained replacement coverage or have agreed in writing to obtain replacement coverage within 60 days of the termination of this policy;

4.  This policy was issued for a term of 60 days or less and the Insured were notified when the policy was issued that it would not be renewed;

5.  The Insured requests a change in "terms" or hazards covered within 60 days of the end of the policy period; or

6.  In accordance with the requirements of this condition, the company has made a written offer to renew the policy with changed "terms" or at a change to the rate on which the premium is based.



# SUPPLEMENTAL UNITED STATES

# NON-CERTIFIED TERRORISM ENDORSEMENT

**"Non-Certified Act(s) of Terrorism"**

With respect to locations in the United States, its territories and possessions and Puerto Rico, the term "Non- Certified Act of Terrorism" defined in this section of this Endorsement will apply in place of the term "Terrorism" wherever it appears in the Policy, except in Section H. Definitions and Item 17.C. under the EXTENSIONS OF COVERAGE SUB-LIMITS Section of the Declarations (S-1). All other terms and conditions of the Policy continue to apply. With respect to all other locations, the term "Terrorism" wherever it appears in the Policy, as defined therein, shall continue to apply.

It is agreed that the coverage provided by this Endorsement shall expire 31 December 2005 simultaneously with the expiration of the Terrorism Risk Insurance Act of 2002 unless the Terrorism Risk Insurance Act of 2002 as originally enacted is extended by an Act of the United States Congress. In that event, coverage under this Endorsement will expire on the earliest of the expiration or cancellation date of the Policy to which it is attached or the revised expiration date of the United States Terrorism Risk Insurance Act of 2002. It is further agreed that an additional pro-rata premium will be due upon any extension of coverage.

Multiple Non-Certified Acts of Terrorism, or multiple acts of Terrorism, which occur within a 72 hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one occurrence or loss.

The coverage afforded by this Endorsement and any other Terrorism coverage provided in this Policy are mutually exclusive, and any coverage provided by this Endorsement and any other Terrorism coverage provided in the Policy do not apply to the same occurrence or loss and are not additive.

Coverage under this section of this Endorsement and the Policy does not apply to any element of loss or damage that is otherwise excluded under this Policy.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Endorsement or the Policy.

Definition:

A "Non-Certified Act of Terrorism" means an act that involves a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.

7181S (6/04)



**Affiliated FM
Insurance Company**

# APPLICATION OF POLICY TO DATE AND TIME RECOGNITION:

It is understood and agreed that, with respect to situations caused by the so-called "Year 2000" (hereinafter Y2K) problem, or any similar date or time recognition problem by computer hardware or software, this policy applies as follows. Date or time recognition means the recognition, interpretation, calculation, comparison, differentiation, sequencing, accessing or processing of data involving one or more dates or times, including the Year 2000.

1. The policy does not pay for remediation, change, correction, repair or assessment of any Y2K or similar date or time recognition problem in any computer hardware or software, whether preventative or remedial, and whether before or after a loss, including temporary protection and preservation of property. The policy does not pay for any time element loss resulting from the foregoing remediation, change, correction, repair or assessment.

2. Failure of computer hardware or software to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000, is not physical loss or damage insured against under the policy. The policy does not pay for any such incident or for any time element loss resulting from any such incident.

3. Subject to all of its terms and conditions, the policy does pay for physical loss or damage not excluded by the policy which results from a failure of computer hardware or software to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times. Such covered resulting physical loss or damage does not include any loss, cost or expense described in 1 or 2 above. If such covered resulting physical loss or damage occurs, and if this policy provides time element coverage, then subject to all of its terms and conditions, the policy also covers any insured time element loss directly resulting therefrom.

"Computer hardware or software" as used herein means any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether the property of the Insured or not.

"Data" as used herein includes but is not limited to "Electronic Data Processing (EDP) Data" as defined elsewhere in this policy.

# AFFILIATED FM INSURANCE COMPANY
# APPALACHIAN INSURANCE COMPANY
## Walnut Creek (925) 934-2200
## 100 Pringle Avenue
## Suite 400
## Walnut Creek, California 94596  Fax: (925) 934-7657

## PROPERTY LOSS REPORTING PROCEDURE:

Losses must be reported upon discovery in order to ensure prompt action including immediate adjuster assignment, if necessary. Strict adherence to this procedure enables us to assign the most direct and professional property talents to losses which may give rise to a claim under your Affiliated FM or Appalachian Insurance Company policy. Authorization, selection, and assignment of an appropriate adjuster is extended by the Affiliated FM/Appalachian Claims Manager.

## FIRST NOTICE OF LOSS:

The first notice or report of any occurrence that may give rise to a claim under an Affiliated FM or Appalachian policy, is to be communicated directly by telephone (925) 934-2200, Fax no. (925) 934-3271, or mailed to the following claims personnel at the above address:

Richard A. Sunny, Claims Manager

## HOLIDAYS—EMERGENCY

Telephone loss information to:

1-877-NEW-LOSS   (1-877-639-5677)

The captioned address should also be used for general inquiries, coverage questions, status inquiries, and related correspondence.

# EXHIBIT C

1   JOYCE C. WANG [Bar No.: 121139]
    CHRISTOFER C. NOLAN [Bar No.: 229542]
2   CARLSON, CALLADINE & PETERSON LLP
    353 Sacramento Street, 16th Floor
3   San Francisco, California 94111
    Telephone:    (415) 391-3911
4   Facsimile:    (415) 391-3898

5   Attorneys for Defendant
    AFFILIATED FM INSURANCE COMPANY

6

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      IN AND FOR THE COUNTY OF SANTA CRUZ

10

11  THRESHOLD ENTERPRISES, LTD., a          )   CASE NO.:  158936
    Delaware corporation,                    )
12                                           )
                 Plaintiff,                  )   **ANSWER OF AFFILIATED FM**
13                                           )   **INSURANCE COMPANY TO**
             vs.                             )   **AMENDED COMPLAINT**
14                                           )
    AFFILIATED FM INSURANCE                  )
15  COMPANY, a Rhode Island corporation, and )   **JURY TRIAL DEMANDED**
    DOES 1 through 30,                       )
16                                           )
                 Defendants.                 )   Original Complaint Filed:
17                                           )   December 17, 2007
18  ─────────────────────────────────────── )

19       Defendant AFFILIATED FM INSURANCE COMPANY ("Defendant") hereby answers

20  the Amended Complaint ("Complaint") of Plaintiff THRESHOLD ENTERPRISES, LTD.

21  ("Plaintiff") as follows:

22              **ANSWER TO ALL CAUSES OF ACTION**

23       Pursuant to California Code of Civil Procedure § 431.30(d), Defendant denies generally

24  and specifically each and every allegation set forth in the Complaint, and further denies that

25  Plaintiff has suffered damages in the amounts alleged or in any sum whatsoever by reason of any

26  act, breach, or omission on the part of Defendant.

27

28

_____
ANSWER OF AFFILIATED FM INSURANCE COMPANY TO AMENDED COMPLAINT
                                                    CASE NO.: 158936

*Sidebar (left margin):* CARLSON CALLADINE & PETERSON LLP
353 Sacramento Street
16th Floor
San Francisco, CA 94111

*Stamp:* FILED
JAN 16 2008
ALEX CALVO, CLERK
BY DEBORAH ROJAS
DEPUTY, SANTA CRUZ COUNTY

*Stamp:* BY FAX

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to Allege Facts to Support Any Cause of Action)

The Complaint fails to state facts sufficient to constitute a claim for breach of contract against Defendant.

### SECOND AFFIRMATIVE DEFENSE

#### (Comparative Fault)

In the event that Plaintiff has suffered any damages whatsoever, which is specifically denied herein, then said damages were directly and proximately caused by the acts, omissions, carelessness, or negligence of Plaintiff, and/or its agents. Therefore, Plaintiff's recovery, if any, should be reduced to the extent that said alleged damages are attributable to said acts, omissions, carelessness, or negligence.

### THIRD AFFIRMATIVE DEFENSE

#### (Third-Party Comparative Fault)

In the event that Plaintiff has suffered any damages whatsoever, which is specifically denied herein, then said damages were directly and proximately caused by the acts, omissions, carelessness, or negligence of individuals over whom Defendant has no authority and/or control. Therefore, Plaintiff's recovery, if any, should be reduced proportionally thereby.

### FOURTH AFFIRMATIVE DEFENSE

#### (Failure to Mitigate)

Plaintiff and its agents and representatives failed to take reasonable steps and/or failed to mitigate any damages complained of herein. Therefore, Plaintiff's recovery, if any, should be barred or reduced to the extent that said alleged damages are attributable to said failure to mitigate.

### FIFTH AFFIRMATIVE DEFENSE

#### (Failure to Perform Duties and/or Conditions Precedent)

Plaintiff has failed to perform the duties required of it under the terms of the alleged contract and/or may have violated one or more of the conditions or provisions of the alleged contract, and by reason of such failure and/or violation is not entitled to any benefits of said contract.

2

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

## SIXTH AFFIRMATIVE DEFENSE

### (Claim Is Not Covered and/or Is Excluded)

Defendant has already paid the full amount due under the terms of the insurance contract at issue, which provides no coverage for any of the additional losses alleged in the Complaint. If any additional losses alleged in the Complaint are found to fall within the scope of the insuring clause of the insurance contract, then those losses are excluded by one or more of the exclusions set forth in the insurance contract.

Coverage for Plaintiff's claim is limited by all of the terms and conditions of Affiliated FM Insurance Company Policy No. TS182. The policy limitations include, but are not limited to, the following:

## BUSINESS INTERRUPTION ENDORSEMENT

**4. Period of Interruption:**

A. For purposes of determining the loss payable under this endorsement, the period of interruption is defined as:

1) The period from the time of direct physical damage insured by this policy;

To the time;

2) When, with due diligence and dispatch, physically damaged property could be:

    a) Repaired or replaced; and

    b) Made ready for operations, under the same or equivalent physical and operating conditions that existed prior to such damage;

************

C. The period of interruption:

1) Will include that period for which physically:

    a) Damaged; or

    b) Destroyed;

    Raw materials would have supplied operating needs.

2) Will not include any additional time resulting from the inability to procure suitable:

3

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

a) Raw materials; and

b) Supplies;

To replace those physically damaged or destroyed.

## SEVENTH AFFIRMATIVE DEFENSE

### (Good Faith Assertion of Right)

Each and every act done or made by Defendant and its officers, employees, and agents was a good faith assertion of its legal rights and obligations. At all pertinent times herein, Defendant acted in good faith, dealt fairly, and had a reasonable basis for its actions.

## EIGHTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

The Complaint and some, or all, of the claims and causes of action asserted therein, are barred by the applicable statutes of limitations, including, but not limited to, Code of Civil Procedure §§ 335.1, 337, 338, 339, 340 and 343.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Provide Timely Notice)

Plaintiff failed to timely notify Defendant of a potential claim under the alleged contract. By reason of such failure it has prejudiced Defendant, and, pursuant to the terms of the alleged contract, Plaintiff is not entitled to any benefits of said contract.

## TENTH AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiff's Complaint, including each alleged cause of action, is barred by the equitable doctrine of estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Laches)

Plaintiff's Complaint, including each alleged cause of action, is barred by the equitable doctrine of laches.

4

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

### TWELFTH AFFIRMATIVE DEFENSE

#### (Waiver)

Plaintiff's Complaint, including each alleged cause of action, is barred by the doctrine of waiver.

### THIRTEENTH AFFIRMATIVE DEFENSE

#### (Additional Affirmative Defenses)

Defendant reserves the right to assert additional affirmative defenses that become available or apparent as this litigation proceeds.

### PRAYER

WHEREFORE, Defendant AFFILIATED FM INSURANCE COMPANY prays that:

1.     Plaintiff take nothing by its Complaint;

2.     The Complaint be dismissed;

3.     Judgment be entered for Defendant and against Plaintiff;

4.     Defendant recover from Plaintiff its costs of suit and defense herein; and

5.     For such further relief as the Court may deem proper.

DATED: January 16, 2008          CARLSON, CALLADINE & PETERSON LLP

By: _____
JOYCE C. WANG
Attorneys for Defendants, AFFILIATED FM
INSURANCE COMPANY

134936

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

ANSWER OF AFFILIATED FM INSURANCE COMPANY TO AMENDED COMPLAINT
**CASE NO.: 158936**

**PROOF OF SERVICE BY MAIL**
(Code of Civil Procedure §§ 1013a(3) & 2015.5)

*Threshold Enterprises v. Affiliated FM Insurance Co.*; Santa Cruz Superior Court No. 158936

I, the undersigned, declare that I am employed in the County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is CARLSON, CALLADINE & PETERSON LLP, 353 Sacramento Street, 16th Floor, San Francisco, California 94111.

On January 16, 2008, I served the attached:

**ANSWER OF AFFILIATED FM INSURANCE COMPANY TO AMENDED COMPLAINT - JURY TRIAL DEMANDED**

on the person(s) named below in said cause, by placing a true copy thereof enclosed in an envelope with postage prepaid fully thereon. Said envelope(s) were thereafter deposited with the United States Postal Service at San Francisco, California, in accordance with this firm's business practice for collection and processing correspondence for mailing, with which I am personally and readily familiar. All correspondence is deposited with the United States Postal Service on the same day in the ordinary course of business. Said envelope(s) were addressed as follows:

Dawn S. Pittman, Esq.
Morgan, Lewis & Brockius LLP
One Market St., Spear Street Tower
San Francisco, CA  94105

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed at San Francisco, California, on January 16, 2008.

_____
Margie Jones

ANSWER OF AFFILIATED FM INSURANCE COMPANY TO AMENDED COMPLAINT
**CASE NO.: 158936**